141 So.2d 636 (1962)
A.W. NENOW AND ELMER C. GREENBACKER, INDIVIDUALLY, AND D/B/A CLIMATE CONTROL INSULATION COMPANY, NOT INC., APPELLANTS,
v.
L.C. CASSIDY & SON OF FLORIDA, INC., AN INDIANA CORPORATION, APPELLEE.
No. 2616.
District Court of Appeal of Florida, Second District.
May 23, 1962.
*637 Jack S. Carey (of Carey & Harrison), St. Petersburg, for appellants.
Robert R. Tench (of Tench & Whitehurst), Clearwater, for appellee.
SHANNON, Chief Judge.
Defendants below appeal from a final decree in a suit in equity for injunction and other relief.
The defendant, Nenow, had been employed by L.C. Cassidy & Son of Indiana, Inc., and worked for this corporation for a period of time in 1953. In 1954 he left this corporation and established an enterprise in Indiana selling the same type of products. The latter enterprise was subsequently discontinued and Nenow approached the Indiana corporation requesting re-employment. The corporation had been qualified to do business in the State of Florida and it had a subsidiary corporation in Florida, L.C. Cassidy & Son of Florida, Inc., but the latter at that point was inactive and transactions in Florida were being carried out by the Indiana corporation. In view of the fact that Nenow had a desire to leave Indiana, it was suggested that he go to work for the corporation in Florida, which he did in 1955. After working in Florida for a time, Nenow became dissatisfied and was threatening to leave, at which point he was advised that if he wished to stay he would have to sign an employment contract. In the employment contract, which was executed on August 3, 1957, and which is the subject of this suit, it is provided:
"3. Salesman also agrees that he will not at any time while acting as salesman for Cassidy, or within sixty (60) months after termination of such service for himself or any other person, firm or corporation, call upon, solicit orders or work from any persons, firms or corporation who shall have been customers of Cassidy, nor will he in any way directly or indirectly solicit, divert, take away or attempt to solicit, divert or take away any customers of Cassidy within such time; *638 and Salesman further agrees that he will not at any time during the terms of this contract, or within sixty (60) months after termination or leaving the services of Cassidy for himself or any other person, form [sic] or corporation engage [sic] in the business of selling insulation materials in the franchise territory of Pinellas County, Florida."
Subsequently, the assets of L.C. Cassidy & Son of Indiana, Inc., including Nenow's employment contract, were assigned to L.C. Cassidy & Son of Florida, Inc. Insofar as Nenow was concerned, this was an exchange of stock for assets, the parties remaining the same. The assignment put no additional burdens on Nenow and he continued to work and accept the benefits from such assigned contract.
Nenow resigned about April 6, 1960, and about four days later, together with one Elmer Greenbacker, purchased an existing corporation, known as, Climate Control Insulation Company, which was an organization selling insulation materials. This suit was filed, asking for an injunction and other relief, under the above mentioned contract of employment. In his counterclaim, Nenow sought $1,487.07 as earned and unpaid commissions. The plaintiff alleged that it suffered a monetary loss by Nenow's competition and attempted to prove that it had less sales volume while Nenow was competing against the corporation as compared with the year before when he had been working for the corporation. At trial the secretary of the corporation admitted that it owed Nenow $899.31, which had, in fact, been earned by him as commissions. The chancellor below found that the assignment of the contract of employment was valid and in no way prejudiced the rights of Nenow, and that there was a continuing employment-ownership and management substantially identical with that which preceded the taking over of the subsidiary in Florida; and it was further found that the assignment of the contract of employment was not abrogated due to change in corporate form. The final decree provides:
"ORDERED, ADJUDGED AND DECREED, that the defendant A.W. Nenow is hereby restrained and enjoined from engaging in the business of selling insulation materials, directly or indirectly, for himself or any other person, firm or corporation, in Pinellas County, for a period of sixty (60) months from date hereof, and it is further
"ORDERED, ADJUDGED AND DECREED that the defendant Elmer Greenbacker is enjoined from participating with the defendant A.W. Nenow in such business in Pinellas County, Florida, for a period of sixty (60) months from date hereof, * * *"
As to the question of damages, the chancellor ruled:
"With regards the counterclaim filed herein, it is the opinion of this court that the plaintiff should take nothing on account of his claim for damages, and the defendant should take nothing on account of his counterclaim."
The appellant has posed three questions in this appeal, namely: 1) Was it error to hold that one corporation could assign the particular contract to another and have the successor corporation enforce a negative covenant not to compete? 2) Was it error to enjoin a former employee from competing only in the sale of insulation materials when the contract further restricts the employee from competing in the sale of other building materials? 3) Did the court commit error when it denied Nenow any relief in his counterclaim?
On the first point we find that there are two lines of authority. No Florida case is cited to us that applies to either one of the two divergent views and hence it will be necessary for this court to adopt and apply the view that we think more cogent and compelling.
*639 In 35 Am.Jur., Master and Servant, Sec. 33, it is stated:
"The incorporation of the employer's business without other change does not abrogate the contract of employment, or alter the liability of the parties one to the other. The same is true of a merging or combining of the business with those of others."
While Florida has not ruled directly on this point, it was said in the case of Orlando Orange Groves v. Hale, 1935, 119 Fla. 159, 161 So. 284:
"Assuming that this contract was a personal contract, yet when the contract was actually assigned to Holbrook, and the assignment was approved by the corporation, which thereafter dealt with Holbrook as if the contract had been made originally with him, and the parties acted upon this basis for several years, Holbrook managing the affairs of the organization, which services were accepted by the corporation, and the latter allowing him a drawing account of $600 per month, something in the nature of a novation occurred, or at least a modification of the contract with the consent of the parties thereto, which neither the corporation, nor its board of directors, nor its stockholders could afterwards repudiate. 46 C.J. 576."
The court in the Orlando case, supra, also said:
"* * * The general rule is that contracts involving relations of personal confidence and personal services are not assignable, but such contracts may be assigned by consent of parties. The acts and conduct of a party to a contract, with knowledge of the fact that it has been assigned, may be such as to warrant the conclusion that a provision in the contract against assignment has been waived, as where work has been performed and been accepted. * * *"
Notwithstanding the fact that the New York case of Seligman & Latz v. Noonan, 1951, 201 Misc. 96, 104 N.Y.S.2d 35, holds that a bi-lateral contract involving performance of personal services cannot be assigned by either party without the consent of the other, a case involving the same plaintiff and almost identical facts was decided four years later in Pennsylvania, Seligman & Latz of Pittsburgh v. Vernillo, 1955, 382 Pa. 161, 114 A.2d 672. An injunction was granted in the Pennsylvania case and the court stated, in part:
"Defendants contend that the contract is not binding upon them because Seligman & Latz were originally a partnership and failed to aver and prove an assignment of this contract to the corporation after they incorporated. There is no merit in this contention. The law is accurately stated in 35 Am.Jur., Master and Servant, sec. 33: `The incorporation of the employer's business without other change does not abrogate the contract of employment, or alter the liability of the parties one to the other.'"
We think the law as contained in the Pennsylvania case is consonant with good reasoning and we adopt it. See also Thames v. Rotary Engineering Co., Tex. Civ.App. 1958, 315 S.W.2d 589; Mann Commission v. Ball, Tex.Civ.App. 1932, 48 S.W.2d 780; and Sands v. Potter, 1896, 165 Ill. 397, 46 N.E. 282, 284.
In his second point, Nenow complains that the chancellor modified the restrictive terms of the non-compete portion of the contract. Appellee contends that the appellants should not be allowed to assign this ground as error inasmuch as that portion of the decree was in their favor and there is no cross-appeal. Without deciding that question, we shall answer the appellants' contention on the merits of the question itself. It appears from the record that in the contract of employment Nenow agreed not to engage in the business of selling insulation materials or other building *640 materials after termination of his services, while the injunction applied only to the sale of insulation materials.
Ordinarily, the cases in accord with this portion of the decree concern the reasonableness or unreasonableness of the geographical territory covered by the contract. For example, in the case of Spinks Tool & Supply Co. v. Riebold, Tex.Civ.App. 1958, 310 S.W.2d 668, a contract of employment was entered into which provided that for a five year period following termination of the employee's services, he would not engage in the same or similar business in the states of New Mexico, Texas and Oklahoma. However, the employee was primarily active only in a portion of Oklahoma, and a small portion of New Mexico and West Texas. The trial court, in denying the injunction to the employer considered that the restraint was unreasonable and the contract was void. The appellate court, in reversing, held that the injunction should have been granted but that the trial court should confine it to the territory actually covered by the employee in his work. The court stated:
"* * * We think the trial court was correct in holding that the area provided in the contract, covering the entire three states, was unreasonable, and we hold that the territory set out in the court's judgment as being reasonable, is the only territory where the contract should be enforced. We do not mean, however, that the provision necessarily was unreasonable, because at the time the contract was entered into, so far as we know, it may have been contemplated by the parties that appellant's business would eventually cover the entire three states, and if that had been true at the time appellee severed his employment with appellant, then the provision as to space would not necessarily have been unreasonable. What we are saying here, is that it would be unreasonable for the court to grant an injunction preventing appellee from engaging in the supply business, similar to that of appellant, in the parts of the three states in which appellant had not been active. To do so would result in unnecessary harm to appellee, and be of no benefit to appellant. * * *"
See also in this regard Foltz v. Struxness, 1950, 168 Kan. 714, 215 P.2d 133; Burroughs Adding Machine Company v. Chollar, Tex.Civ.App. 1935, 79 S.W.2d 344; and John T. Stanley Co. v. Lagomarsino, D.C. 1931, 53 F.2d 112.
It appears to us that the contract under discussion in the instant case is severable in its terms and that it is just as practical to restrain the appellant to a less extent than the contract provided in regard to the product being sold as it is to limit his restraint geographically, as has been done in so many cases. We hold that in no sense was the chancellor re-writing the contract when he limited the substance of his restraint.
In his third point, the appellant, Nenow, contends that inasmuch as the secretary of the appellee-corporation admitted owing him $899.31, to which there was no legally supported claim to offset, he should have been awarded that amount. We agree. In the reply of the corporation to Nenow's counterclaim for commissions, it is admitted that certain funds are due and owing to Nenow for commissions. The corporation denied, however, the amount set forth in the counterclaim. The secretary of the corporation testified that the orders submitted by Nenow before his employment terminated earned him $899.31 in commissions but that no part of that amount has been paid him.
In defense to the counterclaim the corporation sought to show that the gross figure for the business done at the time Nenow was with them was greater than it was for the same time without him. This method showed a substantial difference, but we cannot say, nor could the chancellor say, that it was because of, or had anything to do with, Nenow's efforts *641 on behalf of the corporation. In other words, it was too speculative and should not have been considered as a determining factor on this point. Under the evidence before him, the chancellor should have ruled that Nenow was entitled to the amount of $899.31 as commissions earned but not paid him.
For the reasons set forth, the final decree appealed is affirmed in part, reversed in part, and remanded for the entry of an order not inconsistent with this opinion in regard to the question of damages discussed above.
ALLEN and SMITH, JJ., concur.