564 So.2d 186 (1990)
Beatriz PINO and Viva America Media Group, a Florida General Partnership; Mambisa Broadcasting Corp., a Florida Corporation; and License Corp. No. 2, a Florida Corporation, Appellants,
v.
SPANISH BROADCASTING SYSTEM OF FLORIDA, INC., Appellee.
Nos. 90-1008, 90-1009.
District Court of Appeal of Florida, Third District.
June 26, 1990.
Adams Hunter Angones Adams Adams & McClure and Christopher Lynch and Frank Angones, Miami, for appellant Beatriz Pino.
Barranco, Kellough & Kircher, P.A., Daniels & Hicks, P.A., and Sam Daniels, Miami, for appellant Viva America Media Group.
Catlin, Saxon, Tuttle and Evans, P.A., and H. James Catlin, Jr., and Brian L. Fink, Miami, for appellee.
*187 Before NESBITT, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Beatriz Pino ["Pino"] and Viva America Media Group, et al. ["Viva"] appeal from a nonfinal order granting a temporary injunction in favor of Spanish Broadcasting System of Florida, Inc. ["SBS"] in an action to enforce a covenant not to compete. We affirm.
On October 8, 1985, Pino signed a five-year employment contract as a radio announcer and disc jockey with Radio WCMQ, Inc., and Great Joy, Inc. [the Stations]. Paragraph 5 of the contract provided that:
EMPLOYEE agrees that she will not engage directly or indirectly in the broadcasting business ... in Dade or Broward Counties, Florida, for a period of twelve (12) months after the termination of her employment by THE STATIONS... .
Pino's employment contract also provided that it was "transferable or assignable by THE STATIONS and shall be binding upon and inure to the benefit of THE STATIONS' successors or assigns."
In December of 1986, the assets of the Stations were sold to SBS. As part of the sale, Pino's employment contract was assigned to SBS.[1] After the sale, Pino continued to work for SBS and accept the benefits from the assigned employment contract.
On October 14, 1989, Pino contracted with Viva for the position of program director and "on the air personality" at Viva's FM radio station.[2] Pino's position with Viva was to commence when her legal obligations to SBS had terminated. Pino gave timely notice to SBS that her employment with SBS would terminate on March 31, 1990, the end of her five-year contractual commitment.
SBS brought the present action against Pino and Viva seeking a temporary injunction to enforce the noncompetition agreement. Viva and Pino counterclaimed for declaratory relief, contending that under section 542.33(2)(a), Florida Statutes (1985),[3] the purported assignment of Pino's agreement not to compete was invalid. Pino and Viva further contended that Pino's alleged oral consent to the assignment violated the Statute of Frauds, section 725.01, Florida Statutes (1985), because the assignment was not capable of performance within one year.
Ultimately, the trial court concluded that section 542.33, Florida Statutes (1985), did not preclude assignment of Pino's agreement not to compete because the express terms of her employment contract provided for its assignment. The trial court further found that the Statute of Frauds was not an issue because Pino consented to the assignment in writing in her original employment contract. Pino was enjoined from working for any Dade or Broward radio station as a disc jockey, announcer, or program director for six months. Viva was likewise enjoined from employing Pino for six months.[4]
On appeal, Pino and Viva contend that, despite the existence of the assignability provision in Pino's employment contract, a strict construction of section 542.33, Florida Statutes (1985), prohibits the enforcement of her agreement not to compete by an employer who was not a party to the original agreement. This is an issue of first impression in Florida.[5] However, it is *188 a well-settled principle of contract law that contracts for personal services are assignable by consent of the parties. Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284 (1935); Schweiger v. Hoch, 223 So.2d 557 (Fla. 4th DCA 1969); 3 Williston, Contracts § 423 (3d ed. 1960).
A review of the statute relied on by appellants reveals that the legislature, in enacting section 542.33 (formerly section 542.12), merely granted employers and employees the right to freely contract for covenants not to compete. In particular, "[t]he statute was designed to allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them." Miller Mechanical, Inc. v. Ruth, 300 So.2d 11, 12 (Fla. 1974). See Tomasello, Inc. v. de los Santos, 394 So.2d 1069 (Fla. 4th DCA 1981). Even where the trial judge believes that enforcement of a specific covenant not to compete would be "unduly harsh and oppressive," courts have consistently held that absent any overriding public interest in having the restricted employee's services available to it, the only authority a trial judge has is to determine the reasonableness of the covenant's time and area restrictions.[6]Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062, 1063 (Fla. 3d DCA 1980), rev. denied, 419 So.2d 1048 (Fla. 1982); see Pinch-A-Penny of Pinellas County, Inc. v. Chango, 557 So.2d 940 (Fla. 2d DCA 1990); Florida Pest Control & Chemical Co. v. Thomas, 520 So.2d 669 (Fla. 1st DCA 1988). Once the covenant is found to be reasonable, irreparable injury is presumed and injunctive relief is generally the appropriate remedy. See Cordis Corp. v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986). Finally, section 542.33(2)(a) does not expressly prohibit the right to assign personal service contracts containing covenants not to compete.
Despite the apparently broad ambit of section 542.33(2)(a), appellants contend that the statute cannot be extended to permit a subsequent employer who was not a party to the original noncompetition agreement to enforce the covenant. In support of this contention, Pino and Viva rely on Manpower, Inc. of Milwaukee v. Olsten Permanent Agency of Central Florida, Inc., 309 So.2d 57 (Fla. 2d DCA 1975). In Manpower, the court ruled that section 542.12, Florida Statutes (1973) (renumbered as 542.33) "cannot be extended to permit a third party beneficiary to enforce a covenant not to compete." Id. at 59. Appellant's reliance on Manpower is misplaced. First, Manpower did not involve the issue of assignability of covenants not to compete. Second, SBS was not a third party beneficiary of the contract at issue but was the assignee of an expressly assignable employment contract. Third, unlike the third party beneficiaries in Manpower, SBS had a direct employment relationship with Pino which Pino accepted for four years. Manpower, therefore, does not control here.
Other jurisdictions have held that covenants not to compete are assignable business assets. In Mail-Well Envelope Co. v. Saley, 262 Or. 143, 149, 497 P.2d 364, 368 (1972), the Supreme Court of Oregon held that where an employment agreement incorporating a noncompetition provision specified that "the provisions of this contract shall extend to the successors, and assigns of the Employer," the agreement was enforceable by the successor corporation who was assigned the contract. Similarly, in Torrington Creamery v. Davenport, 126 Conn. 515, 12 A.2d 780 (1940), the purchaser of a milk distribution business sought to enforce a noncompetition covenant in an employment agreement executed by an employee and the former owner of the business. The court held that the *189 covenant was an assignable asset of the business and, therefore, enforceable by the purchaser of the business. Id. at 521, 12 A.2d at 783. The rationale of Torrington was applied in Saliterman v. Finney, 361 N.W.2d 175 (Minn.App. 1985). There, the court held that "a covenant not to compete in an employment agreement is assignable ancillary to the sale of a business to protect the goodwill of that business." Id. at 178. Specifically, the court held that the contract language unconditionally manifested "that the parties contemplated and assented to the future assignments of their respective interests." Id.
We agree with the cited authorities. Because the contract containing the covenant not to compete included a provision permitting assignment, Pino's covenant not to compete was assignable and, therefore, enforceable by SBS. Moreover, the broad language of section 542.33(2)(a), Florida Statutes (1985), indicates that the legislature did not intend to extinguish the existing right to assign personal service contracts, including those which contain covenants not to compete. Our holding conforms with the policy of preserving the sanctity of contract and providing uniformity and certainty in commercial transactions. As stated by the Fourth District in Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133, 1137 (Fla. 4th DCA 1981), a case involving the enforcement of a covenant not to compete,
[i]f contracts are to have any viability at all, there must be some means of meaningful enforcement available from the courts. This is increasingly true as society becomes, or is perceived by many as having become, more litigious. The bargain struck and perpetually enshrined by a simple handshake is a thing of the past. Society needs assurance that written contracts will not follow in the footsteps of the "gentleman's agreement" and become extinct.
Pino agreed that her employment contract, including the one-year prohibition against competition, was assignable. She must be held to that obligation.
As to Pino's second point on appeal, the trial court properly concluded that Pino's oral consent to the assignment did not violate the Statute of Frauds. Pino consented to the assignment in writing in her original employment contract. No further consent was required.
For the reasons stated in this opinion, the trial court's order granting a temporary injunction in favor of SBS is
AFFIRMED.
NOTES
[1] Herbert Dolgoff, the Stations' president, testified that Pino assented to the assignment of her employment contract to SBS.
[2] Viva and SBS are competitors in the South Florida Spanish language radio market.
[3] Section 542.33(2)(a) provides that:

[O]ne who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business ... within a reasonably limited time and area, so long as ... such employer continues to carry on a like business therein. Said agreements may be enforced by injunction.
[4] The trial court ordered that, prior to the termination of the six-month period, a hearing will be held to "further consider the reasonableness of the length of time and scope of the non-competitive provisions."
[5] In Nenow v. L.C. Cassidy & Son of Fla., Inc., 141 So.2d 636 (Fla. 2d DCA 1962), the Second District addressed the issue of assignability of covenants not to compete where the assignee corporation was a subsidiary of the assignor. In Nenow, the court held that the employee's agreement not to compete was enforceable by the assignee corporation because "[i]nsofar as Nenow [the employee] was concerned, there was an exchange of stock for assets, the parties remaining the same." Id. at 638. Unlike the assignee in Nenow, SBS was a stranger both to the Stations, the assignor, and Pino, the employee, at the time Pino's contract was assigned. Nenow, therefore, is not relevant in this appeal.
[6] Here, the reasonableness of the time and area restrictions has not been challenged.