110 So.2d 397 (1959)
STANDARD NEWSPAPERS, INC., a Tennessee corporation, Appellant,
v.
J.W. WOODS, Appellee.
Supreme Court of Florida.
March 6, 1959.
Rehearing Denied April 21, 1959.
*398 James M. Smith, Jr., Ocala, for appellant.
Greene, Ayres & Greene, Ocala, for appellee.
THOMAS, Justice.
The appellee sought in the Circuit Court of the Fifth Judicial Circuit a declaratory decree construing and declaring his rights and status under a certain agreement between appellant and himself, declaring the agreement void, and holding him to be free to engage in the newspaper and printing business in Marion County.
From the allegations of his complaint it seems that the appellee, and Clyde Hooker, R.F. Brown and Marion Publishing Company, as parties of the first part, entered into the contract with appellant, as party of the second part, by which they agreed that they would not re-enter the newspaper field in the county, directly or indirectly, as owner, stockholder or partner for a period of five years and would not abet such competition.
The appellee alleged that he was untrained in any other business and could not, therefore, earn a livelihood for his family in the county. He claimed that under Sec. 542.12, Florida Statutes 1957, and F.S.A., the agreement was not binding on him inasmuch as he had not sold the good will of any business, and had not executed it as a stockholder selling his shares in a corporation.
By the law are condemned contracts under which persons are restrained from pursuing a lawful profession, trade or business, with two paragraphs of exceptions. One relates to partners and is not involved here. Sec. 542.12(3), supra. The other appears to exclude from the operation of *399 the law persons in three categories: those who sell the good will of businesses, shareholders who sell all their stock in corporations, and employees or agents. Persons in the first two classes may agree with the buyers to desist from engaging in a similar business for a reasonable time in a reasonable area, while those in the third class, agents and employees, may assume the same obligations and may further agree not to solicit old customers of the former employer. Sec. 542.12(2).
The appellee devoted the allegations in his complaint to the one contract dealing with promises not to compete with the appellant for a stated period in a specified area but it is not possible to decide this controversy on the agreement isolated by him. A few days before it was executed, Marion Publishing Company, as party of the first part had executed a memorandum of agreement with appellant as party of the second part for the sale, by the former to the latter, of The Marion Sun, a weekly newspaper, and all the equipment, circulation lists and good will of the paper.
The appellee, who owned about 25% of the stock of Marion Publishing Company and held the positions of director and secretary in the corporation, was reluctant to sign the ancillary agreement securing the purchaser against competition from the signatories. His associates fearing that the sale, then evidently being negotiated pursuant to the memorandum, might not be consummated unless the agreement not to compete was signed paid him $1,000 consideration for his signature.
In its answer the appellant took the position that the appellee was restrained only from re-entering the newspaper or printing business in the capacity of owner, stockholder or partner and from aiding someone else in the establishment of a competing business. The appellant asserted that Sec. 542.12, supra, had no application to the present situation. Furthermore, appellant charged that the statute was unconstitutional because it so impaired the right to contract as to amount to taking its property without due process of law in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States. The circuit judge held that the assault upon the statute should fail and the ruling gave this court jurisdiction of the controversy. Leafer v. State, Fla., 104 So.2d 350.
In the appellant's brief there is a dearth of citations to buttress its contention that the primary inhibition in the law unduly restricts the right to contract by condemning agreements designed to prevent a person from following a lawful trade, business or profession.
Originally, under the common law of England, contracts restricting a man's right to follow his calling were considered void as against public policy. This view developed from the requirement that a man could not pursue a trade to which he had not become apprenticed, and that one so committed was subject to penalty if he did not exercise that trade. Consequently an agreement to restrain him from following his trade would result either in his violation of the law or the deprivation of his right to earn a livelihood.
Before the passage of time and the change of conditions brought refinements of the rule there had been reluctance on the part of courts to enforce contracts likely to stifle competition, Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, or to interfere with a person's right to make a living, Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32.
In Arond v. Grossman, Fla., 75 So.2d 593, 595, we said that contracts "not to compete or work for a competitor" were unenforceable in the absence of "some special equity." We have furnished italics.
We have referred briefly to the history of such contracts and their fate in the courts because the appellant, in effect, asks us to hold invalid an act that, following the *400 principles announced, generally condemns them with, of course, noteworthy exceptions. We cannot agree that an act is unconstitutional that denounces in the main agreements designed to prevent a person from following his lawful "profession, trade or business" when such agreements in the cases cited and others like them have for so long been rejected by the courts for fundamental reasons.
Moreover, the appellant's challenge is not impressive for under the exceptions may be done what appellant attempted to accomplish, namely, the preclusion of competition by those from whom it had bought the business including the good will. This seems to have been long recognized as an exception to the general rule, Massari v. Salciccia, 102 Fla. 847, 136 So. 522; Wilson v. Pigue, 151 Fla. 734, 10 So.2d 561, and the appellant in undertaking to operate under it was afforded abundant opportunity to protect itself from the competition of the sellers in a reasonable territory for a reasonable time.
We come, then, to the conclusion that the chancellor ruled correctly when he held the act constitutional. As for the appellee, as appellant concedes, he is not prohibited as an employee from securing a livelihood for his family but is only precluded from entering the field as a proprietor.
This view does not, however, mean that we agree with the ultimate decision of the chancellor.
Appellee entered a court of equity and when he did so he became amenable to equitable principles. We take now a close look at the facts to see whether or not he should have been rewarded with a decree declaring him "free to engage in the newspaper business and * * * the printing business in Marion County" without interference from the appellant.
When negotiations to sell the property were under way appellee displayed antagonism to the deal and this opposition became so strong that his associates finally paid him $1,000 to sign the "non-competition" agreement. Although the attack in the complaint was directed at but one agreement, it would be impractical and illogical to decide the point of law now involved without considering the two. They were so closely related that they should be examined in pari materia to ascertain the facts essential to proper disposition of this litigation. Plainly, execution of the agreement assuring non-competition was so necessary to consummation of the sale that the appellee thought his signature should fetch him a sizeable amount of money, which it did, and his associates thought his signing was worth their disgorging that amount. Doubtless the appellant, too, regarded it an indispensable part of the transaction.
Now the appellee, with the $1,000 in his pocket, attempts to escape the effect of his bargain upon grounds that are tenuous indeed. While claiming the protection of the first part of the act declaring invalid contracts in restraint of the exercise of a lawful business and so on, he disclaims any applicability of the exceptions, because he says he did not sell the good will of a business and did not as a shareholder of a corporation sell all his stock in the corporation.
The second of these statements is literally true because it was the assets of the corporation, and not the stock that was sold. The first is very difficult to understand. To accept the appellee's literal interpretation of the part of the statute referring to transfer of good will would amount to keeping the letter without regard for the spirit by holding he was not "[o]ne who [sold] the good will of a business." But if we focus on the entire transaction, it is plain that in reality he and his colleagues for a price sold a newspaper and all its assets including the good will. As a part of the deal he and they represented that they would secure the buyer against competition from them. The importance *401 of this assurance was fully realized by appellee, else why did he put the value of $1,000 on his signature and why did he think his associates met his demand. Having, presumably, got his share of the purchase price, and having, surely, received his "bonus" he should not in a court of equity be upheld in his attempt to repudiate his obligation.
The decree is reversed with directions to dismiss the complaint at the cost of the appellee.
Affirmed in part; reversed in part.
TERRELL, C.J., and ROBERTS, DREW and THORNAL, JJ., concur.