183 So.2d 532 (1966)
Reuben CAPELOUTO, Appellant,
v.
ORKIN EXTERMINATING COMPANY OF FLORIDA, Inc., a Florida Corporation, Appellee.
No. 34037.
Supreme Court of Florida.
January 5, 1966.
Rehearing Denied March 14, 1966.
Wilfred C. Varn, of Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellant.
J. Lewis Hall of Hall, Hartwell & Hall, Tallahassee, for appellee.
*533 O'CONNELL, Justice.
Appellant, Capelouto, was formerly employed as a branch manager by Orkin, the appellee exterminating company. The contract of employment provided that upon termination of appellant's employment he would not compete with Orkin for a period of two years within the area managed by him. Appellant terminated his employment with Orkin effective May 1, 1964, apparently as a result of a personality conflict with a superior in that organization. Almost immediately thereafter he commenced his own exterminating business within the prohibited area and instituted this suit. In the trial court appellant sought a declaratory judgment concerning his rights and status under the above employment contract and asked to be relieved from the provisions of the contract limiting his right to enter into competition with Orkin in the structural pest control business.
Before the chancellor, appellant argued, alternatively, (1) that the contract was void under F.S. Sec. 542.12, F.S.A. because not reasonable as to the area covered, as required by subparagraph (2) of that section; and (2) that if the contract were held valid under the statute, the statute itself was invalid as depriving him of the equal protection of the law and of his property right to earn a living.
The chancellor rejected both arguments and enjoined appellant from competing with appellee for a period of two years beginning February 15, 1965, which date was about 30 days after entry of the final decree and some nine months after the filing of the suit. On petition for rehearing the decree was amended to make the injunction begin to run on March 1, 1965. Concerning the constitutionality of the statute, the chancellor concluded:
"In view of the numerous applications of the statute and the apparent recognition in at least one case that Standard Newspapers, Inc., supra, has settled the constitutionality of the statute and perceiving no reason to distinguish that case from this in constitutional application, it is concluded that subsection (2) of F.S. 542.12 [F.S.A.] is constitutional."
The chancellor having passed directly upon the validity of the statute, the case is properly before us for review by appeal.
Appellant raises four questions for our consideration: (1) whether Sec. 542.12(2) is valid under Florida and federal constitutions; (2) whether the subject covenant not to compete is invalid under the statute as covering too large a geographical area; (3) whether the chancellor abused his discretion in imposing a two year injunctive period running some nine months beyond the date contemplated by the contract itself; and (4) whether there are any special equities in favor of the appellant that require a holding that the contract was void as unreasonable. We shall discuss these points in the order listed.
In Standard Newspapers v. Woods, Fla. 1959, 110 So.2d 397, this court affirmed the decree of the chancellor insofar as it held the subject statute to be valid, saying at p. 400:
"We come, then, to the conclusion that the chancellor ruled correctly when he held the act constitutional. As for the appellee, as appellant concedes, he is not prohibited as an employee from securing a livelihood for his family but is only precluded from entering the field as a proprietor."
As the reported facts and the above quoted portion of that case reveal it did not involve a contract restraining an employee from competing with his former employer as does the case at bar. Therefore, as the chancellor recognized in the decree under review, the Standard Newspapers case did not specifically settle the constitutionality of subsection (2), Section 542.12, as applied to contracts affecting employees or agents. We will consider the question now.
*534 As was pointed out in our opinion in Standard Newspapers, supra, under the common law, contracts restricting a man's right to follow his calling were considered void. But the reasons which supported the common law view have long since disappeared. In any event, there can be no doubt that the legislature of our state has the power to enact legislation superseding the common law as it did by enactment of Section 542.12, and more specifically by the enactment of subsections (2) and (3) thereof.
Appellant argues that the statute is invalid as denying him equal protection and due process of law, but he offers no convincing authority in support. There has been no showing of invalidity sufficient to overcome the presumption of validity which we must indulge in favor of every properly enacted statute. Kass v. Lewin, Fla. 1958, 104 So.2d 572. We therefore hold subsection (2) of Section 542.12 as applied to such contracts between an employee and an employer to be constitutional.
We agree with appellant that the fact that such contracts may be lawfully made and enforced under the statute does not ipso facto make every such contract enforcible as written. The restrictive provisions of such contracts will generally be enforced in such way as to protect the legitimate interests of the employer without doing harm to the public interest, and without inflicting an unduly harsh or oppressive result on the employee.
Absent any overriding public interest in having the restricted employee's services available to it, and we find none present here, the guidelines to be followed in enforcing any such contract are reasonableness as to time and as to area.
In the instant case the contract prohibited the appellant-employee from competing with the appellee-employer in the area in which the employee was engaged in managing the employer's business and servicing its customers. The area encompasses 15 or 16 North and Northwest Florida Counties. The chancellor found the area not to be unreasonable and we agree.
The restrictive time, two years from termination of appellant's employment, was also found to be reasonable by the chancellor. We see no ground upon which this ruling should be disturbed.
Appellant also contends that the chancellor abused his discretion in enjoining appellant from competing with appellee for a period of two years from March 1, 1965, rather than two years from the date he terminated his employment, as provided in the agreement. The chancellor did not explain why he ordered the injunctive period to commence on March 1, 1965, rather than on the date of his decree, January 11, 1965, or on the effective date of appellant's resignation from the employment, May 1, 1964.
Nevertheless, the chancellor's reasoning is apparent. He intended to give the appellant approximately a month to arrange his affairs before the injunction would become effective. More important, he must have determined that under the contract the appellee-employer was entitled to have a period of two years during which the appellant-employee would not be in competition with it and in contact with its customers in the area involved. Inasmuch as the appellant had been in competition with the appellee continuously since his resignation, the chancellor must have determined that this was the only way to give the appellee its two competition-free years. We can find no fault with this theory or with the result of its application.
Appellant argues that he acted swiftly to obtain an adjudication of his rights under the contract and he should not be penalized by extending the restrictive period beyond the time specified in the contract. This argument ignores the fact that appellant has participated in the prohibited activities *535 during the course of the litigation. To agree with appellant would be to nullify, in major part, the effectiveness of such agreements. This is particularly true since in most cases of this kind, as the chancellor found in this one, money damages are not susceptible of proof with the required degree of certainty and therefore cannot be awarded. This is the apparent basis for the provision in the statute of injunctive relief. We think that the procedure followed by the chancellor is the only way by which the provisions of the contract and the statute could be effectuated.
Appellant's last contention is that there are special equities which should operate in his favor. We find none that would not be present in almost every case of this nature.
The decree appealed from is
Affirmed.
THORNAL, C.J., DREW, J., and TROWBRIDGE, Circuit Judge, concur.
CALDWELL, J., dissents in part.
THOMAS and ROBERTS, JJ., dissent and agree with CALDWELL, J.
CALDWELL, Justice (dissenting in part):
I must dissent in part. The contract between the parties provided the employee, Capelouto, would not, within two years after termination of his employment, engage in competition with Orkin. Capelouto terminated his employment on May 1, 1964, and it is my view the injunction should have been made effective for a period ending two years thereafter. The majority opinion holds that, because it would have been difficult to assess damages for the breach, it is only fair to enjoin for two years from February 15, 1965, the date of the Chancellor's decree, rather than as agreed upon in writing by the parties. But, under our system of jurisprudence, it is not our function to trim and pad our conclusions to fit the curves and dimples of fairness nor to otherwise temper the rigors of express agreements. Stare decisis is preferable to the Napoleonic idea of meting fairness in accordance with the passing whim of each judge in each case.
In all other respects I concur.
THOMAS and ROBERTS, JJ., concur.