403 So.2d 1133 (1981)
Ann H. SILVERS, Appellant,
v.
DIS-COM SECURITIES, INC., Appellee.
No. 81-133.
District Court of Appeal of Florida, Fourth District.
September 23, 1981.
*1134 Frank J. Bennardo, Boca Raton, for appellant.
Maurice M. Garcia of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellee.
HERSEY, Judge.
After voluntarily terminating her employment with Dis-Com Securities, Inc., Ann H. Silvers accepted a position with Dominick & Dominick as an account executive engaged in the business of buying and selling securities. On the basis that such employment was in direct violation of a covenant not to compete, both as to the nature of the business and its location, Dis-Com obtained a temporary injunction restraining Silvers from competing with her former employer. This appeal tests the validity of that restraint.
*1135 The legal framework within which this controversy is to be determined commences with the common law prohibition against agreements in restraint of trade and ends with the statute which codifies the common law but which permits the limited use of covenants not to compete. § 542.12, Fla. Stat. (1979). That statute provides:
(2)(a) ... one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, ... so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction.
We are asked to determine whether the statute has been properly applied to the facts of this case and, if so, whether the remedy is appropriate.
After being employed in a clerical position for some period of time, Silvers, at the expense of her employer, Dis-Com, was trained and then licensed for the position of registered representative. On February 28, 1978, the parties entered into an agreement which provided, in pertinent part:
In the event of the termination voluntarily or involuntarily, of the undersigned's employment with the "companies", or any of them, for any reason, then for a period of one (1) year from the date of said termination, the undersigned will not engage, in any capacity, in Dade or Broward Counties, Florida, directly or indirectly, in the securities business with a stock brokerage firm who is not a member of a National Stock Exchange or with any stock brokerage firm who in the regular course of its business discounts its commission rates regardless of whether the stock brokerage firm is a member of a National Stock Exchange, or any other business similar to the business being operated by the "companies", or any of them during the period of employment, and will not solicit or contact, directly or indirectly, any customers of the "companies", or any of them, which the "companies", or any of them, now have or may have during the period of employment of the undersigned by the "companies", nor give the names or addresses or information concerning said customers to anyone, nor induce any of the "companies'" employees to leave the employ of the "companies".
Thereafter Silvers terminated the employment relationship and, although she had an offer from a firm that was not in competition with Dis-Com, she accepted a position with a firm within the prohibited area and which "in the regular course of its business discounts its commission rates."
The trial court modified the covenant not to compete by excluding a portion of the area in which competition was not allowed. In all other respects the covenant was deemed reasonable and therefore unobjectionable. Because (1) Silvers' place of employment was within the reduced area in which competition was prohibited; (2) her new employer operated at discounted rates; and (3) the one year period had not expired, Silvers was prohibited from continuing in that employment during the pendency of the litigation.
Only one argument is made on the issue of whether the statute was appropriately invoked in this case. The balance of appellant Silvers' brief is devoted to the propriety of injunctive relief.
It is appellant's contention that the agreement is too vague to be enforceable under the statute. She maintains that since May of 1975 when fixed rate commissions for stock brokers were abolished the term "discounted commission" has no clear meaning. This being so, reference in the agreement to "any stock brokerage firm who in the regular course of its business discounts its commission rates" is not sufficiently definitive, rendering the entire covenant vague, meaningless and unenforceable. The trial court impliedly determined that appellant's new employer fell within this prohibited category. Evidence in the record amply supports such a finding. We are not persuaded that the term is too vague to *1136 permit enforcement. We further agree that appellant's conduct violated the covenant. The remaining question is whether injunctive relief was appropriate.
There has been a plethora of cases during the past decade dealing with this issue. From these cases arise several settled principles and a few unanswered questions.

(1) The covenant not to compete.
The statute provides that an agreement not to compete "within a reasonably limited time and area ..." is enforceable. Thus a prerequisite for enforceability is that the covenant appear on its face to be reasonable. This is part and parcel of plaintiff's cause of action so that the court may address the issue of reasonableness in time and area whether or not the defendant raises the question in his pleadings. On the other hand if the covenant appears on its face to be reasonable then the burden shifts to the defendant to plead and prove that it is for some reason not reasonable on the facts of the particular case. Tomasello, Inc. v. de Los Santos, 394 So.2d 1069 (Fla. 4th DCA 1981). The trial court found that the covenant between Silvers and Dis-Com was reasonable as to time (one year) but unreasonable as to area (Dade and Broward Counties). The injunction therefore prohibited competition in a more limited area than provided for in the covenant but still including the location of Silver's new place of employment. The court clearly has the authority to modify both the time and area aspects of a covenant not to compete. Indeed the court may in effect increase the length of the period if it is necessary to do equity. Enforceability, then, requires a balancing of "the legitimate interest of the employer... the public interest ... and ... [the] result [of such enforcement] on the employee." Capelouto v. Orkin Exterminating Co. of Florida, 183 So.2d 532, 534 (Fla. 1966). The injunction issued below meets this test of reasonableness.

(2) Stating a cause of action.
This court recently had occasion to enumerate the elements which must be proven to support the award of a temporary injunction. In Contemporary Interiors, Inc. v. Four Marks, Inc., 384 So.2d 734, 735 (Fla. 4th DCA 1980) we held that a party must prove:
(1) irreparable harm, (2) a clear legal right, (3) an inadequate remedy at law, and (4) considerations of the public interest. State Department of Health and Rehabilitative Services v. Artis, 345 So.2d 1109 (Fla. 4th DCA 1977). Moreover, since a temporary injunction is an extraordinary remedy, it should be granted sparingly and only after the moving party has alleged and proven facts entitling it to relief. Jennings v. Perrine Fish Market, Inc., 360 So.2d 434 (Fla.3d DCA 1978).
We point out this general rule as a starting point only, with the admonition that proceedings involving Section 542.12, Florida Statutes (1979) appear to operate under modified guidelines. The rule is set out in Hunter v. North American Biologicals, Inc., 287 So.2d 726 (Fla. 4th DCA 1974). In that case we said that in order to state a cause of action to enforce a covenant falling within the purview of the statute it was necessary only to allege:
(a) The contract
(b) The appellant's intentional direct and material breach thereof.
(c) No adequate remedy except by injunctive relief.
The court, when considering a motion to dismiss must accept these allegations as true. The allegations are sufficient to state a cause of action under the statute. Id. at 728.
The complaint in the instant case meets these criteria and is therefore sufficient. Implicit in our holding is a recognition that irreparable injury may be presumed in cases involving violation of a covenant not to compete or not to divulge trade secrets. It need not be alleged nor proved.
In at least one case a different rule has been followed. In Uni-Chem Corp. of Florida, Inc. v. Maret, 338 So.2d 885, 887 (Fla.3d DCA 1976) the court stated that:
Notwithstanding statutory right to injunctive relief [see: § 542.12, Fla. Stat.], *1137 upon proof of a valid covenant not to compete said statutory provision does not negate the necessity of showing irreparable harm as a prerequisite to the granting of a temporary injunction. Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1975).
We respectfully disagree with our sister court. The Wilson case relied on by that court did not involve an application of the statute authorizing covenants not to compete.

(3) The remedy: injunctive relief.
For the same reasons that justify an assumption that the employer will be irreparably damaged by breach of a noncompete provision it will customarily be obvious that money damages, even if susceptible of reasonable proof, may not compensate for all aspects of such a violation. Injunctive relief is therefore the "favored remedy."
"The Court may award damages for breach of contract but the normal remedy is to grant an injunction." Miller Mechanical, Inc. v. Ruth, 300 So.2d 11, 12 (Fla. 1974). That was done here and we think appropriately so.

(4) Temporary v. Permanent injunctive relief.
We can find no clear lines drawn by the cases in this area between an application for relief pending the outcome of the litigation and final injunctive relief. The usual rule is that a temporary injunction is an extraordinary and drastic remedy which should be sparingly granted. Jennings v. Perrine Fish Market, Inc., 360 So.2d 434 (Fla.3d DCA 1978). On the other hand, the establishment of legal rights carries with it the duty to grant an appropriate remedy. Data Supplies, Inc. v. Cowart, 240 So.2d 829 (Fla.2d DCA 1970). Because the statute specifically provides for injunctive relief and for the added reason that most or all of the harm may be done long before a final judgment is entered, we hold that where the proof supports the skeletal allegations that we have previously approved as stating a cause of action then temporary or emergency injunctive relief may properly be granted. The record in the instant case contains sufficient evidence to support the relief granted.
We have previously determined that the covenant is not void for vagueness. The record clearly supports the conclusion that appellant entered into the agreement and then intentionally violated the covenant not to compete.
If contracts are to have any viability at all, there must be some means of meaningful enforcement available from the courts. This is increasingly true as society becomes, or is perceived by many as having become, more litigious. The bargain struck and perpetually enshrined by a simple handshake is a thing of the past. Society needs assurance that written contracts will not follow in the footsteps of the "gentlemen's agreement" and become extinct.
We therefore affirm.
AFFIRM.
MOORE and GLICKSTEIN, JJ., concur.