520 So.2d 669 (1988)
FLORIDA PEST CONTROL AND CHEMICAL COMPANY, Appellant,
v.
Rex P. THOMAS, Appellee.
No. 87-679.
District Court of Appeal of Florida, First District.
February 24, 1988.
*670 Marguerite H. Davis and Richard P. Lee, of Katz, Kutter, Haigler, Alderman, Eaton & Davis, P.A., Tallahassee, for appellant.
Edwin F. Blanton, of Dixon, Blanton, Shelley & Adams, Tallahassee, for appellee.
MILLS, Judge.
Florida Pest Control & Chemical Co. (FPC) appeals from the entry of an injunction enforcing a covenant not to compete contained in its employment contract with appellee Thomas. We reverse and remand.
In October 1978, Thomas entered into an employment contract with FPC accepting employment as the branch manager of FPC's Tallahassee office. The contract enumerates various "mutual covenants and agreements", included among which is the provision pertinent to this case:
7. Employee expressly covenants and agrees, which covenants and agreements are of the essence of this contract, that during the term of his employment by company and for a period of two (2) years following the termination of said employment (whether the termination of his employment is voluntary or involuntary), he will not, for himself or in any capacity for or in behalf of any other person, firm, partnership, association or corporation:
(a) Solicit, call on or sell, any customer of company, any fumigating, termite or pest control service or products for the purpose of eradication or controlling [various pests] nor in any manner divert or take away any such customer or customers.
(b) Service, work or sell contracts or accounts of customers of company in the territory hereinafter described for or incident to the control and eradication of [various pests] or in any manner compete with company in said territory.
(c) Become employed in any manner by any competitor of company.
Thomas continued in his position with FPC until 3 October 1986, when FPC terminated his employment. Thomas thereafter filed a suit seeking a declaratory judgment that the covenant not to compete contained in his employment contract was no longer operative given FPC's alleged breach of that contract by its termination of him. Along with its answer to said complaint, FPC filed a counterclaim to enjoin Thomas from engaging in activities expressly proscribed by the foregoing noncompetitive clause.
The declaratory judgment suit and the counterclaim were heard in the same nonjury proceeding, at the conclusion of which the court indicated orally that it would enjoin Thomas in accordance with all the provisions of the contract save that found in paragraph 7(c) above, finding that provision overbroad. The oral ruling of the court was reflected in a final judgment enjoining Thomas until 1 October 1988 from: 1) soliciting customers of FPC, 2) using or directing the use of FPC's methods or formulas to eradicate or control various pests, and 3) from soliciting, acquiring or diverting customers or business of FPC. As the court stated at the hearing, the final judgment did not reflect enforcement of the provision forbidding employment in any manner with any competitor of FPC.
Based on this omission, FPC filed a motion for rehearing, arguing that the court had failed to enforce all of the provisions of the contract of employment, referring to paragraph 7(c). At the hearing on the motion, the court again orally explained that *671 the provision had been left out of the final judgment because it was "too broad." It stated that the judgment permitted Thomas to work for competitors or start his own business so long as he did not take any of the actions prohibited by the final judgment. The motion for rehearing was thereupon denied.
It is well settled that when the language of a contract is ambiguous, a court can give that language meaning and effect in accordance with the intended purpose designed by the contract. 11 Fla.Jur.2d Contracts Section 117. However, when a contract is clear and unambiguous, the court cannot give it the meaning other than that expressed in it, and cannot rewrite the contract for the parties. Put another way, where the rights and interests of the parties are definitely and clearly stated in a written contract, the terms of the contract should control for it must be assumed that the intent of the parties is as it is distinctly and positively expressed by them.
In this case, paragraph 7(c) of the employment contract between the parties clearly states that Thomas will not "become employed in any manner by any competitor of company." This language is clear and unambiguous, and therefore not open to omission by the trial court simply because it is of the opinion that the language is overbroad and hence apparently oppressive to the employee.
The trial court's action does more than violate the foregoing established contract principles. Section 542.33(2)(a), Florida Statutes (1985) provides, in part, that "one who is employed as an agent or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area."
It has been repeatedly held that upon finding that the time and space restrictions of a covenant not to compete are appropriate, and that the employer has not itself breached the agreement, the trial court has no power to do anything but enforce the terms of the covenant as written by injunction. Air Ambulance Network v. Floribus, 511 So.2d 702, 703 (Fla. 3d DCA 1987) (emphasis supplied); see also Kverne v. Rollins Protective Services Co., 515 So.2d 1320 (Fla. 3d DCA 1987) (the only authority the court possesses over the terms of a noncompetitive agreement is to determine, as the statute provides, the reasonableness of its time and area limitations). This has been held true even in cases where the trial court felt that the enforcement of a specific noncompetitive provision would be unduly harsh and oppressive. See Twenty-four Collection, Inc. v. Keller, 389 So.2d 1062, 1063 (Fla.3d DCA 1980) pet. for rev. dism. 419 So.2d 1048 (Fla. 1982); Rollins Protective Services Co., Inc. v. Lammons, 472 So.2d 812, 813 (Fla. 5th DCA 1985).
The trial court in this case explicitly agreed that the time and area restrictions of the instant contract were reasonable. Therefore, even if it be said that the trial court refused to enforce the provision regarding employment with FPC's competitors as unduly harsh and oppressive to Thomas, that reason would not be sufficient to permit such refusal.
The order in this case is therefore reversed insofar as it omits to enforce paragraph 7(c) of the employment contract, and remanded for amendment so as to embrace that language.
BARFIELD, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting.
I would affirm because the trial court, in accord with the statutory authorization for agreements by employees "to refrain from ... engaging in a similar business" (e.s.), exercised lawful discretion in framing the injunction which prohibited Thomas:
... for himself or in behalf of any person ... from using or directing or inducing the use of, or revealing, any methods or formulas [of employer] or from soliciting, acquiring or diverting any customers or the business or patronage of [employer].
There appears to be no question here that this order effectively prohibits all conduct *672 violative of paragraph 7(a) and (b) of Thomas' agreement that he would not:
7... . for himself or ... for any other person .. .
(a) Solicit, call on or sell, any customer of company, any fumigating, termite or pest control service or products for the purpose of eradicating or controlling [various pests] nor in any manner divert or take away any such customer or customers.
(b) Service, work or sell contracts or accounts of customers of company in the territory hereinafter described for or incident to the control and eradication of [various pests] or in any manner compete with company in said territory.
The language of the injunctive order, supra, extending to any indirect diversion or acquisition of employer's business and patronage, also implicitly construes and enforces paragraph 7(c) of the agreement (not to "[b]ecome employed in any manner by any competitor") in the full sense necessary to implement the statute. Section 542.33(2)(a), Florida Statutes. This enactment, in derogation of common law restraints,[1] authorizes such agreements only against "engaging in a similar business." The trial court appears to me to have effectively construed the words "in any manner" in 7(c), supra, to mean in any competitive manner, in accord with the statute and its history. The injunction herein properly effectuates that construction and retains a necessary respect for the principles involved in the historical milieu out of which this dispute arises.
Appellant employer seeks to compel, in addition, a broader injunctive order to effect a literal and absolute application of the terms of subparagraph 7(c) of the agreement to forbid such employment in any capacity, without regard to the employee's performance of any functions having competitive impact on employer's business. Recent decisions cited by the majority do not compel such breadth, establishing instead that equitable relief by way of injunction is properly granted based on presumed irreparable injury from breach of a valid contract. I find none which, in the context before us, overrule the view stated in an early opinion according discretion with respect to equitable remedies on such contracts, which are to be "enforced ... without inflicting an ... oppressive result on the employee," noting further "the fact that such contracts may be lawfully made... under the statute does not ipso facto make every such contract enforcible as written." Capelouto v. Orkin Exterminating Co. of Florida, 183 So.2d 532, 534 (Fla. 1966). Cf., Spurlock v. State, 466 So.2d 212 (Fla. 1985); Twenty-four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980), pet. for rev. dismissed 419 So.2d 1048 (Fla. 1982).
I would accordingly affirm.
NOTES
[1] Cf. Std. Newspapers v. Woods, 110 So.2d 397, 399 (Fla. 1959), recognizing reasonable time and area restrictions in certain cases antedating the statute, but noting "under the common law ... contracts restricting a man's right to follow his calling were considered void as against public policy," and "reluctance on the part of courts to enforce contracts likely to... interfere with a person's right to make a living."