551 So.2d 503 (1989)
SARASOTA BEVERAGE COMPANY, Appellant,
v.
Donald JOHNSON and Robert Blaikie & Sons, Inc., Appellees.
No. 88-01265.
District Court of Appeal of Florida, Second District.
August 2, 1989.
Rehearing Denied October 25, 1989.
*504 Keith J. Hesse of Foley & Lardner, Van Den Berg, Gay, Burke, Wilson & Arkin, Orlando, for appellant.
Carl J. Robie, III, Sarasota, for appellee Donald Johnson.

ON MOTION FOR REHEARING AND MOTION FOR REHEARING EN BANC
PARKER, Judge.
A majority of the judges of this court grants appellant's motion for rehearing en *505 banc filed pursuant to Florida Rule of Appellate Procedure 9.331(c), withdraws the prior opinion in this case which was filed on February 10, 1989, and concurs in the following opinion.
Sarasota Beverage Company, a wholesale beer distributor in Sarasota and Manatee Counties, employed Donald Johnson as a route deliveryman for a period of five and one-half months from August 1987 until January 15, 1988. When Johnson began his employment with appellant, he executed a noncompetition agreement that contained the following pertinent provisions:
2. During the term of your employment by us and during the one and one-half year period following termination of your employment with us, you shall not, in any county specified in paragraph 3 below, directly or indirectly own, manage, operate, join, control, or participate in or be connected with as an officer, employee, partner, stockholder, consultant, or otherwise, any business, individual, partnership, firm, or corporation which is at the time engaged in a business which acts as a wholesale distributor or dealer of beer, ale, near beer, wine, or other alcoholic beverages, or which is otherwise directly or indirectly, at the time, in competition with the business of the SARASOTA BEVERAGE COMPANY or any subsidiary or affiliate of the SARASOTA BEVERAGE COMPANY.
3. The restrictions set forth in paragraph 2 above shall apply in the following Florida counties: Sarasota and Manatee.
When Johnson voluntarily resigned his employment with appellant, he accepted similar employment with appellee Robert Blaikie & Sons, Inc. (Blaikie), another wholesale beer distributor operating in Sarasota, Charlotte, and Lee Counties. Initially Johnson's principal route with Blaikie was in Sarasota County. Appellant personally contacted Blaikie and sent a certified letter to Blaikie advising it that Johnson, while working for Blaikie, was in violation of the noncompetition agreement.[1] Blaikie ignored these contacts.
Appellant then filed a complaint seeking to enforce the noncompetition agreement and simultaneously moved for a preliminary injunction. The trial judge held a full adversarial hearing on the motion for preliminary injunction whereat appellant, Blaikie, and Johnson presented witnesses in support of their respective positions. The undisputed evidence showed that Blaikie assigned Johnson a delivery route that was primarily in Charlotte County only after appellant filed the lawsuit. Johnson, however, still serviced an account in the Englewood area of Sarasota County in direct violation of the noncompetition agreement.
After the hearing on appellant's motion for preliminary injunction, the trial judge entered the order that is the subject of this appeal. The order contained the following relevant findings and disposition:
3. As a result of this suit, Defendant Blaikie assigned Defendant Johnson to a route that was mainly in Charlotte County, although it has a "couple" of stops in the southern part of Sarasota County.
4. Defendant Johnson's job with Defendant Blaikie is his sole source of livelihood.
5. The Plaintiff, under the above circumstances, has not shown that the threatened injury to it outweighs any possible harm to the Defendant Johnson. See Cordis Corporation v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986).
Therefore, it is
ORDERED that Plaintiff's Motion for Preliminary Injunction is denied without prejudice to Plaintiff renewing the Motion should Defendant Johnson's activity in Sarasota County expand.
We first observe that section 542.33, Florida Statutes (1987), has validated noncompetition agreements that are reasonable as to time and area. Recently this court has addressed the law in Florida regarding *506 noncompetition agreements and has stated the following:
Employment contracts containing noncompetition agreements are valid and enforceable in Florida. § 542.33, Fla. Stat. (1985); Graphic Business Systems, Inc. v. Rogge, 418 So.2d 1084 (Fla. 2d DCA 1982). The remedy for breach of a noncompetition agreement is an injunction. Id. For purposes of a temporary injunction, irreparable injury is presumed where there is a violation of a noncompetition agreement. Id.; see also Capraro v. Lanier Business Products, 466 So.2d 212 (Fla. 1985). The court may not refuse to give effect to a valid noncompetition agreement on the ground that enforcement would have an overly burdensome effect on employee. Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980). The only authority the court possesses over the terms of a noncompetition agreement is to determine reasonableness of the time and area limitations. Id. The court is not empowered to rewrite a valid noncompetition agreement. Id. "When a contract is clear and unambiguous, the court cannot give it the meaning other than that expressed in it, and cannot rewrite the contract for the parties." Florida Pest Control & Chemical Co. v. Thomas, 520 So.2d 669 (Fla. 1st DCA 1988). If the trial court finds the provisions of a noncompetition agreement unreasonable, the court should modify the agreement and award an appropriate remedy. Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974).
Xerographics, Inc. v. Thomas, 537 So.2d 140, 143 (Fla. 2d DCA 1988).
This court's opinion in Xerographics is consistent with the recent opinion in Florida Pest Control & Chemical Company v. Thomas, 520 So.2d 669 (Fla. 1st DCA 1988), in which the first district court stated:
It has been repeatedly held that upon finding that the time and space restrictions of a covenant not to compete are appropriate, and the employer has not itself breached the agreement, the trial court has no power to do anything but enforce the terms of the covenant as written by injunction. Air Ambulance Network v. Floribus, 511 So.2d 702, 703 (Fla. 3d DCA 1987); see also Kverne v. Rollins Protective Services Co., 515 So.2d 1320 (Fla. 3d DCA 1987) (the only authority the court possesses over the terms of a noncompetitive agreement is to determine, as the statute provides, the reasonableness of its time and area limitations). This has been held true even in cases where the trial court felt that the enforcement of a specific noncompetitive provision would be unduly harsh and oppressive. See Twenty-four Collection, Inc. v. Keller, 389 So.2d 1062, 1063 (Fla. 3d DCA 1980), pet. for rev. dism., 419 So.2d 1048 (Fla. 1982); Rollins Protective Services Co., Inc. v. Lammons, 472 So.2d 812, 813 (Fla. 5th DCA 1985).
The trial court in this case explicitly agreed that the time and area restrictions of the instant contract were reasonable. Therefore, even if it be said that the trial court refused to enforce the provision regarding employment with FPC's competitors as unduly harsh and oppressive to Thomas, that reason would not be sufficient to permit such refusal.
Florida Pest Control & Chemical Co., 520 So.2d at 671.
As shown above, the trial court's findings in this case were very limited. The trial court did find that Johnson maintained a "couple" stops in southern Sarasota County and that Johnson's job with Blaikie was his sole source of livelihood. The trial judge then denied the request for injunction, finding that appellant had not shown that the threatened injury to it outweighed any possible harm to Johnson.
In a covenant-not-to-compete case, such a consideration is relevant only when determining whether the covenant is reasonable as to time and area. Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133, 1136 (Fla. 4th DCA 1981). There is no indication in the record that the trial judge made a determination that the contract was unreasonable as to time or area. Further, Johnson and Blaikie never contested the agreement's limitations specifically as to area (two adjacent counties) and time (eighteen *507 months). The facts of each case determine whether the area and time restrictions are reasonable. Dorminy v. Frank B. Hall & Co., 464 So.2d 154 (Fla. 5th DCA 1985). In this case, Sarasota Beverage does business only in Manatee County and Sarasota County. Witnesses, who were employees of Sarasota Beverage, testified that they observed Johnson, while he was working for Blaikie, servicing the same customers that they were servicing. Further, a corporate officer of Sarasota Beverage testified the company establishes its sales goals and objectives on an annual basis and shares this information with all employees. The eighteen-month time restriction ensures that a former employee cannot impart this confidential information to a competitor while it is still relevant. Also, the time limitation permits a former employee's relationship with a Sarasota Beverage customer to go stale. Accordingly, the record supports a conclusion that the limitations were reasonable as to both the area and time.
Judge Campbell, in his dissent, concludes that the trial judge's decision rested upon his concern that enforcement of the covenant would be unreasonable under the circumstances. The dissent's conclusion in this regard fails to recognize that reasonableness is a consideration only when addressing the covenant's restrictions as to time and area. We find that it is not a fair interpretation of the record that the trial judge concluded that the covenant's restrictions concerning time and area were unreasonable. As noted above, Johnson and Blaikie did not dispute the reasonableness of the time and area restrictions; furthermore, the record could not support such a conclusion.
A court is not empowered to refuse to give effect to a covenant not to compete on the basis of finding that the enforcement of the contract's terms would produce an unjust result by causing an overly burdensome effect upon the employee. Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062, 1063 (Fla. 3d DCA 1980), review denied, 419 So.2d 1048 (Fla. 1982).[2] Although the trial court has discretion in whether to grant an injunction, the injunction should be granted when there is a clear violation of a reasonable covenant not to compete. Foster & Company, Inc. v. Snodgrass, 333 So.2d 521 (Fla. 2d DCA 1976). In the case of Air Ambulance Network, Inc. v. Floribus, 511 So.2d 702 (Fla. 3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988), Judge Schwartz stated:
[T]he [supreme] court has recently and specifically held in the determinative case of Capraro v. Lanier Business Prods., Inc., 466 So.2d 212, 213 (Fla. 1985), that "irreparable injury may be presumed upon the breach of a valid covenant not to compete." This conclusion, which clearly precludes inquiry into the existence of "irreparable injury," which is now deemed established as a matter of law in a case like this, requires reversal of the judgment below.
Under Capraro, upon findings, such as those reached below, that the time and space restrictions are appropriate and that the employer has not itself breached the agreement, the trial court has no power to do anything but enforce the terms of the covenant as written by injunction.
Floribus, 511 So.2d at 703 (citations omitted).
The case of Cordis Corp. v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986), upon which Judge Campbell's dissent relies, is the only covenant-not-to-compete case in Florida that we found which employs an approach which balances the benefits to the *508 employer with the detrimental effects on the former employee and further balances the threatened hardship to the former employee with the degree of likelihood of success on the merits. The Prooslin court apparently utilized this balancing approach to take into account the elements generally required to be proved for the issuance of a temporary injunction, which are "(1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the ... [former employee] outweighs any possible harm to the [employer] ..., and (4) that the granting of a temporary injunction will not disserve the public interest." Prooslin, 482 So.2d at 490 (footnote omitted). Courts, however, have recognized that this general rule has been modified for covenant-not-to-compete cases. See Sentry Ins. v. Dunn, 411 So.2d 336 (Fla. 5th DCA 1982), review denied, 419 So.2d 1196 (Fla. 1982); Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133 (Fla. 4th DCA 1981). These cases hold that only the following elements must be alleged and proved to entitle one to a temporary injunction in a covenant-not-to-compete case: (1) a contract; (2) the former employee's intentional breach of the contract; and (3) the existence of no adequate remedy except injunctive relief, recognizing that irreparable harm is presumed. Sentry Ins., 411 So.2d at 337; Silvers, 403 So.2d at 1136. The Florida Supreme Court expressly approved the Silvers decision in Capraro v. Lanier Business Products, Inc., 466 So.2d 212, 213 (Fla. 1985). This recognized modification of the rule indicates that the balancing of all the elements generally required for the issuance of a temporary injunction is inappropriate when considering a case involving a noncompetition agreement. See Suave Shoe Corp. v. Fernandez, 390 So.2d 799, 800-01 (Fla. 3d DCA 1980) (ordinary equity principles relating to the issuance of injunctions do not apply to noncompetition agreements, because the trial judge's discretion in such cases is limited to time and place restrictions).
Perhaps another explanation of the Prooslin decision is that the case must be distinguished from the other cases cited by the dissent and the present appeal, because there was uncontroverted evidence in Prooslin that the employer breached the agreement. Significantly, the court stated, "There is no question that, but for Prooslin's uncontroverted testimony that Cordis [the employer] breached the agreement regarding his assignment in the undeveloped territory, Cordis would be entitled to a temporary injunction restraining Prooslin from violating the restrictive covenants." Prooslin, 482 So.2d at 489 (footnote omitted).
The dissent discusses five cases in addition to Prooslin which verbalize a balancing approach; however, a close look at those opinions reveals that the courts were using this approach in the context of analyzing the covenants' reasonableness as to time and area. See, e.g., Capelouto v. Orkin Exterminating Co. of Florida, 183 So.2d 532, 534 (Fla.), appeal dismissed, 385 U.S. 11, 87 S.Ct. 78, 17 L.Ed.2d 10 (1966) ("Absent any overriding public interest in having the restricted employee's services available to it, ... the guidelines to be followed in enforcing any such contract are reasonableness as to time and as to area."); Miller Mechanical, Inc. v. Ruth, 300 So.2d 11, 12 (Fla. 1974); Foster & Co. v. Snodgrass, 333 So.2d 521, 522-23 (Fla. 2d DCA 1976); Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239, 241 (Fla. 2d DCA 1973), cert. denied, 285 So.2d 28 (Fla. 1973) ("[T]he general view [is] that time and space limitations determine the reasonableness of such an agreement."); Silvers, 403 So.2d at 1136 (a noncompetition agreement encompassing a reasonable time and area is enforceable).
Judge Campbell's dissent argues that courts are erroneously extending the supreme court's holding in Capraro to conclude that there is an irrebuttable presumption of irreparable injury.[3]Capraro, in *509 approving the Silvers decision, held that irreparable injury must be neither alleged nor proved for entitlement to an injunction in a covenant-not-to-compete case. It is a logical and reasonable extension of the Capraro holding that the trial court should be prohibited from reviewing a factor which is not even an element of the action. Consequently, the trial judge's discretion is rightfully limited in this type of case to a determination of whether there is a valid (i.e., reasonable as to time and area) noncompetition agreement, whether the former employee breached the agreement, and whether no adequate remedy at law exists. See Capraro, 445 So.2d 719, 721 (Fla. 4th DCA 1984), approved, Capraro, 466 So.2d 212, 213 (Fla. 1985).
Finally, Judge Campbell's dissent speaks of a "single foray" by Johnson into Sarasota County. It is significant to note that the appellees reduced their direct violations of the noncompetition agreement to a "single foray" only after Sarasota Beverage was forced to file a lawsuit. A voluntary cessation of wrongful conduct does not necessitate a denial of injunctive relief against acts presently discontinued. Peterson v. Talisman Sugar Corp., 478 F.2d 73 (5th Cir.1973). Courts have recognized that an injunction may be appropriate even though the defendant has voluntarily ceased a practice. See, e.g., Allee v. Medrano, 416 U.S. 802, 810-11, 94 S.Ct. 2191, 2198, 40 L.Ed.2d 566, 578 (1974).
Based upon the above listed authorities, including Xerographics from this court, we reverse the order denying the preliminary injunction and remand to the trial court to determine from the record whether appellant breached the terms of the employment contract.[4]See Snodgrass, 333 So.2d at 523. If the trial court finds that appellant did not breach the agreement, then we direct the trial court to enter a preliminary injunction to enforce the terms of the noncompetition agreement.
Because a majority of this court agrees that the question set forth in Judge Altenbernd's concurring opinion should be certified as a question of great public importance, we certify the following question to the Florida Supreme Court:
IS THE PRESUMPTION OF IRREPARABLE INJURY DESCRIBED IN CAPRARO CONCLUSIVE OR REBUTTABLE?
Reversed and remanded with directions.
RYDER, SCHOONOVER, FRANK, HALL and PATTERSON, JJ., concur.
ALTENBERND, J., concurs specially with opinion.
LEHAN, J., concurs specially with opinion.
CAMPBELL, C.J., dissents with opinion in which DANAHY and THREADGILL, JJ., concur.
SCHEB, J., concurring with the result in the dissenting opinion by CAMPBELL, C.J.
ALTENBERND, Judge, Specially Concurring.
The issue which divides this court is whether Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985), establishes a conclusive presumption of irreparable injury or merely a rebuttable presumption which can be overcome at an evidentiary hearing. Because the supreme court ruled that "irreparable injury is presumed and does not have to be proven," Capraro, 466 So.2d at 213, and because that court declined to review the Third District's decision in Air Ambulance Network, Inc. v. Floribus, 511 So.2d 702 (Fla. *510 3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988), I can only conclude that the supreme court intended to announce a rule of law containing a conclusive presumption.
If I could interpret Capraro in any other manner, I would concur in Judge Campbell's thorough dissent. I do not believe that the enforcement of section 542.33, Florida Statutes (1988), mandates a conclusive presumption. For the deliverymen of this state and other similar employees, the conclusive presumption announced in Capraro competes with their basic constitutional right to be rewarded for their industry. Art. I, § 2, Fla. Const. (1968). In cases where no injury to the employer is demonstrated at an evidentiary hearing, the conclusive presumption merely supports anticompetitive practices which promote no valid interest of this state. Thus, I concur with the majority merely out of obedience to a precedent which I would overrule if I had that authority.
Given the importance of this issue to Florida commerce and in light of this court's great struggle with this issue, I would certify the following question to the Florida Supreme Court:
IS THE PRESUMPTION OF IRREPARABLE INJURY DESCRIBED IN CAPRARO CONCLUSIVE OR REBUTTABLE?
LEHAN, Judge, Specially Concurring.
I agree that Judge Parker's majority opinion is consistent with controlling case law. I write only to note respectfully that it appears to me that the view of Judge Altenbernd expressed in his concurring opinion that the law should be otherwise, which to that extent is in agreement with Judge Campbell's dissenting opinion, would substantially undercut the effectiveness of section 542.33(2)(a) as it relates to employees' noncompetition agreements. The reasons are contained in the Florida Supreme Court's opinion in Capraro. Why section 542.33(2)(a) should be effective, i.e., why it was enacted and serves a state interest, is a subject with profound ramifications which, in any event, is within the province of the legislature.
CAMPBELL, Chief Judge, Dissents with Opinion.
I must respectfully dissent both as to the conclusions of law and fact reached by the majority and also to their directions to the trial court upon remand. There are several important circumstances surrounding the posture of this case as it comes to us that are crucial to my analysis of the present status of the law of Florida governing noncompetition agreements and my resulting dissent.
The first and foremost of those circumstances is that this case comes to us on appeal from the denial by the trial judge of a motion for a temporary injunction after a full adversary hearing. Second, there was ample evidence presented to the trial judge from which he could, and in my opinion did, conclude that temporarily enjoining appellee, Donald Johnson, from pursuing his new employment in the one limited geographical area where that new employment encroached on his former employer's noncompete area would inflict an unduly harsh or oppressive result on appellee Johnson without, at the same time, preventing any irreparable harm to appellant, Sarasota Beverage Company. Third, appellee Johnson raised a possibly meritorious affirmative defense that appellant may have breached its employment contract with appellee Johnson thereby rendering the employment contract containing the covenant not to compete unenforceable because of a failure of consideration. The very existence of that possibly meritorious defense, in my opinion, justifies the denial of the temporary injunction under the circumstances of the case. It is for that reason that I conclude it inappropriate for the majority to direct upon remand that the trial court try that issue as a prerequisite to the grant or denial of the temporary injunction.
The predominant question presented by this appeal is whether a trial judge has any discretion in regard to the issuance of a temporary injunction to enforce a covenant not to compete. If discretion exists, it was properly exercised in this case by the *511 trial judge below. I conclude that trial judges continue to possess the same degree of discretion in noncompete cases as exists in regard to requests for temporary injunctive relief in other types of cases. While most recent Florida cases continue to verbalize the existence of such continued discretion in the trial courts in practical application, in my opinion, that discretion has been eliminated. See Dad's Properties, Inc. v. Lucas, 545 So.2d 926 (Fla. 2d DCA 1989); Xerographics, Inc. v. Thomas, 537 So.2d 140 (Fla. 2d DCA 1988); Florida Pest Control & Chemical Co. v. Thomas, 520 So.2d 669 (Fla. 1st DCA 1988); Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980), rev. denied, 419 So.2d 1048 (Fla. 1982).
The key to that conclusion rests in another conclusion, that the presumption of irreparable harm in such noncompete cases as was enunciated in Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985), is not an irrebuttable presumption but is, after a full adversary hearing on the issue as was held in this case below, subject to proof sufficient to dissipate the presumption. Thus, I am forced to strongly disagree with my colleagues of the third district when they conclude that "[t]his conclusion, which clearly precludes inquiry into the existence of `irreparable injury,' which is now deemed established as a matter of law in a case like this, requires reversal of the judgment below." Air Ambulance Network, Inc. v. Floribus, 511 So.2d 702, 703 (Fla. 3d DCA 1987), rev. denied, 520 So.2d 584 (Fla. 1988). It seems to me that the Florida courts have recently taken the presumption of irreparable injury established in Capraro, extended that presumption into an irrebuttable presumption and from there the leap has been made to virtually abolish the discretion of the trial judge to grant or deny a temporary injunction as the facts of any particular case may dictate.
The recent trend of such cases as Air Ambulance and other similar decisions of Florida's appellate courts toward the establishment of such an irrebuttable presumption and resulting abolition of any discretion in the granting or denying of temporary injunctions in noncompete cases is contrary to well established principles of law concerning covenants not to compete and the statutory exception to the historic disfavor of such covenants. It is significant to me that the cases in which that trend appears more clearly are cases involving appeals from the denial of a permanent injunction. See Air Ambulance; Florida Pest Control; Xerographics; Twenty Four Collection. But see also Dad's Properties.
It is without question that Florida has enacted a valid statutory exception that supersedes the long recognized common law rule that covenants not to compete were not favored and were considered void and, therefore, unenforceable. Capraro; Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974); Capelouto v. Orkin Exterminating Company of Florida, 183 So.2d 532 (Fla. 1966), app. dismissed, 385 U.S. 11, 87 S.Ct. 78, 17 L.Ed.2d 10, reh'g denied, 385 U.S. 964, 87 S.Ct. 390, 17 L.Ed.2d 310 (1966); Standard Newspapers, Inc. v. Woods, 110 So.2d 397 (Fla. 1959); § 542.33, Fla. Stat. (1987). Not, however, since Standard Newspapers, have I discovered any case that considers the fact that section 542.33 and its predecessor statutes are statutory enactments that continue to declare "in the main" that contracts in restraint of trade are invalid. Standard Newspapers, 110 So.2d at 400.
It is only by an exception provided in section 542.33(2) and (3) that the common law prohibition and the general prohibition of section 542.33(1) is relaxed. Overlooked entirely by the cases that have construed section 542.33 and its predecessors and that have developed the present trend of the law of Florida in regard to noncompete agreements is the well established principle that statutes clearly in derogation of the common law must be strictly construed. Such statutes will not be interpreted to displace the common law further than is clearly necessary and will not be construed to make any alteration in the common law other than that which the statute specifies and plainly pronounces. The presumption is that no change in the common law is *512 intended unless the statute is explicit. Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362, 364 (Fla. 1977); Allstate Mortgage Corporation of Florida v. Strasser, 277 So.2d 843 (Fla. 3d DCA 1973), aff'd, 286 So.2d 201 (Fla. 1973); 49 Fla.Jur.2d Statutes § 192.
In my opinion, that rule of statutory construction was first violated in Atlas Travel Service, Inc. v. Morelly, 98 So.2d 816, 818 (Fla. 1st DCA 1957). In that case, the "permissory language" of the predecessor statute to section 542.33(2)(a), wherein it is provided that such noncompete agreements "`may,' in the `discretion' of the court, `be enforced by injunction,'" (emphasis supplied), was severely curtailed and the statutory exception to the common law rule thus liberally rather than strictly construed. Id. at 818. None of the reported cases since Atlas Travel Service, that I have discovered, have discussed the fact that that case was decided contrary to accepted principles of statutory construction. Neither have the more recent cases attempted to reverse the trend in the law of Florida established in Atlas Travel Service that continues to stray further and further away from those time-honored principles of statutory construction. That predominating trend toward the irrebuttable presumption of irreparable harm and the resulting lack of discretion in the granting or denying of temporary injunctions has been strengthening. This strengthening trend has occurred with little discussion or observance of generally accepted rules pertaining to the scope of discretion that should be exercised in the grant or denial of the extraordinary remedy of a temporary injunction. It does not appear to me that the legislature, in enacting section 542.33(2)(a) abrogating, in a limited way, the common law rule, expressed any intent to mandate the issuance of temporary or permanent injunctions in noncompete cases so as to afford a more liberal right to relief in those cases that is not afforded in regard to the application for injunctive relief in other cases.
While there are cases which pronounce and apply what I believe to be the correct rule in regard to the exercise of such discretion, those cases are being largely ignored and sparingly applied. The result is the increasing liberalization of the statutory exception to the common law and statutory general rule prohibiting the enforcement of contracts in restraint of trade. The proper rule regarding the exercise of discretion in the grant or denial of temporary injunctions is, in my opinion, more clearly stated in Cordis Corp. v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986).
The Prooslin court states a number of important and pertinent rules regarding the determination of the propriety of a temporary injunction: (1) The granting or denying of a temporary injunction is an extraordinary and drastic remedy which should be sparingly granted (Prooslin, 482 So.2d at 489); (2) a trial judge, in exercising the discretion to grant or deny a temporary injunction, must be guided by established principles of equity jurisprudence in view of the particular facts presented in the case (Id. at 491); and (3) a balancing-type approach must be utilized by the trial judge to balance the possible beneficial results on the one hand with the possible detrimental results on the other. Id.
Numerous other decisions of the courts of this state, in addition to the Prooslin court, have recognized that courts of equity have discretion in the granting or denying of an injunction whereby an employee is sought to be prevented from competing with the employer. In Capelouto, the court stated:
We agree with appellant that the fact that such contracts may be lawfully made and enforced under the statute does not ipso facto make every such contract enforcible [sic] as written. The restrictive provisions of such contracts will generally be enforced in such way as to protect the legitimate interests of the employer without doing harm to the public interest, and without inflicting an unduly harsh or oppressive result on the employee.
183 So.2d at 534.
In Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974), the court likewise held:

*513 The agreement, however, must be reasonable as regards the time during and the area within which the employee is to be prevented from competing with the employer. In determining the reasonableness of such an agreement, the courts employ a balancing test to weigh the employer's interest in preventing the competition against the oppressive effect on the employee.
Id. at 12 (citations omitted). This court in Foster and Company, Inc. v. Snodgrass, 333 So.2d 521, 523 (Fla. 2d DCA 1976) and in Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239, 243-244 (Fla. 2d DCA 1973), cert. denied, 285 So.2d 28 (Fla. 1973), expressly approved those same principles regarding a finding of reasonableness under the particular circumstances of the case before enforcing an agreement that is unduly harsh or has oppressive results on the employee.
Our colleagues on the fourth district have also addressed the presumptions involved, the shifting burdens of proof and the tests for reasonableness concerning preliminary injunctions regarding noncompete agreements in Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133 (Fla. 4th DCA 1981). That court said, among other things:
The statute provides that an agreement not to compete "within a reasonably limited time and area .. ." is enforceable. Thus a prerequisite for enforceability is that the covenant appear on its face to be reasonable. This is part and parcel of plaintiff's cause of action so that the court may address the issue of reasonableness in time and area whether or not the defendant raises the question in his pleadings. On the other hand if the covenant appears on its face to be reasonable then the burden shifts to the defendant to plead and prove that it is for some reason not reasonable on the facts of the particular case. Tomasello, Inc. v. de Los Santos, 394 So.2d 1069 (Fla. 4th DCA 1981)... . The court clearly has the authority to modify both the time and area aspects of a covenant not to compete. Indeed the court may in effect increase the length of the period if it is necessary to do equity. Enforceability, then, requires a balancing of "the legitimate interest of the employer ... the public interest .. . and [the] result [of such enforcement] on the employee." Capelouto v. Orkin Exterminating Co. of Florida, 183 So.2d 532, 534 (Fla. 1966).
Id. at 1136.
While the case of Twenty Four Collection contains some language that might appear to limit or modify previous rulings that "unjust result" and "overly burdensome effect upon the employee" are important and cognizable facts in determining reasonableness and thus enforceability of noncompete agreements, I do not believe that Twenty Four Collection is a complete and proper statement of the applicable law.
My concern as to the viability of Twenty Four Collection is enhanced by the fact that the same court, in deciding Prooslin, which enunciates so many of the applicable principles of law, does not mention its earlier decision in Twenty Four Collection. It is important in understanding Prooslin to discern that while Prooslin acknowledges that irreparable injury may be presumed, that presumption does not prevent the weighing of relative hardships and harm that may result from the granting or denying of a temporary injunction. But see Air Ambulance.
Finally, while the trial judge here did not use the term "reasonableness" or "unduly harsh or oppressive results on the employee," it is clear from the record of the hearing and the wording and action he took in his order that his concerns centered around the "reasonableness" test. We should look to substance not form.
In this case, as the supreme court observed in Capelouto, the trial judge's "reasoning" is apparent. Appellee Johnson's only possible violation of the agreement was the fact that his prescribed route for Blaikie required him to make a single foray across the Sarasota County line from his principal Charlotte County route to service a neutral noncompetitive customer of both appellant and Blaikie. Obviously, the trial judge concluded that to enforce the agreement *514 in such a small area would be severely detrimental to Johnson and hardly a bother to appellant. In other words, to enforce the agreement in that area of Sarasota County under the circumstances of this case would be unreasonable.
The trial judge could have as readily granted the request for temporary injunction in all of Sarasota and Manatee Counties except for that one location that appellee Johnson continued to serve. Instead, because appellee Johnson's possible violation of the agreement had been virtually eliminated, the trial judge chose to deny the request for temporary injunctive relief, but also provided in his order that appellant could renew its request for relief should appellee Johnson's "activity in Sarasota County expand."
I, therefore, must conclude that the trial judge had ample evidence to support his conclusion that any threatened harm to appellant was outweighed by the possible harm to appellee Johnson. Under those circumstances, his denial of the request for temporary injunction was not a clear abuse of his discretion. I would affirm the order of the trial judge.
SCHEB, J., concurring with the result in the dissenting opinion by CAMPBELL, C.J.
Judge PARKER's opinion on behalf of the court and Chief Judge CAMPBELL's dissenting opinion outline the facts and applicable law. Given the facts and the findings of the trial judge, I cannot say that he abused his discretion in denying appellant's request for a temporary injunction.
Accordingly, I concur with the result reached in Chief Judge CAMPBELL's dissenting opinion and would affirm the trial court's order.
NOTES
[1] Appellant sent Johnson a letter by certified mail, informing Johnson of appellant's desire to enforce the agreement. This letter was returned as unclaimed. Johnson stated he never received the letter.
[2] Judge Campbell's dissent questions the continued viability of Twenty-Four Collection because the third district failed to mention that case in its later decision in Cordis Corp. v. Prooslin, 482 So.2d 486 (Fla. 3d DCA 1986). We, however, note that the third district, in Floribus, cited to Twenty-Four Collection and continued to adhere to the principle that a trial court must enforce a noncompetition agreement which is reasonable as to time and area as long as the employer has not breached the agreement. Floribus, 511 So.2d at 703. We further note that Judge Schwartz wrote both the Twenty-Four Collection and Floribus opinions and that Judges Schwartz and Jorgenson were both on the three-judge panels' unanimous opinions deciding Prooslin and Floribus.
[3] Judge Campbell notes that the trend toward establishing an irrebuttable presumption and limiting of the trial judge's discretion predominantly involves appeals from the denial of a permanent injunction. We note that the following cases were appeals concerning temporary injunctions: Capraro; Dad's Properties, Inc. v. Lucas, 545 So.2d 926 (Fla. 2d DCA 1989); Sentry Ins.; Silvers. Further, courts have recognized that the proof required for issuance of a temporary injunction may be less than the proof mandated for issuance of a permanent injunction, because the harm that the covenant was intended to prevent may be inflicted long before the trial court enters a final judgment. See, e.g., Silvers, 403 So.2d at 1137.
[4] The issue of whether appellant breached the agreement was disputed at the hearing. The trial judge failed to make a finding on this matter. We believe that the trial judge is in the best position to make this determination from the existing record.