464 So.2d 154 (1985)
William R. DORMINY, Appellant/Cross-Appellee,
v.
FRANK B. HALL & CO., INC., a Delaware Corporation, Appellee/Cross-Appellant.
No. 83-1271.
District Court of Appeal of Florida, Fifth District.
January 17, 1985.
Rehearing Denied February 22, 1985.
*155 Kimberly A. Ashby, of Maguire, Voorhis & Wells, P.A., Orlando, for appellant/cross-appellee.
W. David Rogers, Jr., of Rogers, Dowling & Bos, Orlando, for appellee/cross-appellant.
*156 SHARP, Judge.
Frank B. Hall & Co., Inc., a Delaware corporation (Hall), cross-appeals from a declaratory judgment that interpreted and enforced an agreement not to compete against William R. Dorminy, a former employee of Hall's subsidiary corporation which was in the insurance business in Orlando, Florida.[1] After a full hearing on the merits, the trial court ruled that the covenant was valid and enforceable against Dorminy. However, the court shortened the non-compete time limit on Dorminy from three years to one and one-half years following the termination of his employment. We agree the covenant not to compete is valid and enforceable, but we find no basis in the record to reduce its enforcement from the three years provided in the contract.
The business transaction which produced this non-compete provision was a sale in 1976 of the assets of three insurance companies: Risk Management Services, Inc., Risk Management Insurance Agency, Inc., and Risk Management Services of Alabama. Dorminy was the president or chief executive officer of these companies, as well as one of six stockholders of the corporations. Together with proxy voting rights and his wife's ownership, Dorminy controlled a majority of the common stock in these companies.
The assets of the Risk group companies were sold to Hall in exchange for stock in Hall, worth 4.3 million dollars. Both parties admit that the primary asset being sold was the goodwill and fine business reputation of the old Risk group. Thereafter the old Risk group corporations were dissolved and the Hall stock was distributed to the Risk group stockholders. Dorminy and his wife received approximately 44% of the Hall stock.
Hall then formed three new insurance companies with the same names as the old Risk group. They were operated as subsidiary corporations of Hall, or divisions of subsidiaries. Following the closing, Dorminy worked for Frank B. Hall of Florida, Inc., a subsidiary of Hall. He managed the new Risk group for six years, as their president or chief executive officer.
The new Risk group continued to handle the same kind of insurance business, customers, and area as was served by the prior corporations prior to the closing.[2] The newly formed corporations had the same office address and location as the old Risk group. Dorminy's knowledge of the business and his contacts with customers and other Risk underwriters made him an essential and key figure in the business, as he had been in the old Risk group, and he continued to be instrumental in acquiring and maintaining customers.
In 1982 Dorminy left Hall following a bad business year for the new Risk group. The reasons for his departure are not relevant to the issues involved in this appeal, *157 and they were in conflict at the trial. When Dorminy indicated he intended to go into a competing insurance business in the near future, Hall brought this declaratory suit to interpret and enforce the covenant not to compete.
The trial court ruled that the contract was valid and enforceable against Dorminy under section 542.33(2)(a), Florida Statutes (1983) as a person who sells the goodwill of a business. This statute provides:
One who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the goodwill from him, and so long as such employer continues to carry on a like business therein. Said Agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction.
Although in this case Dorminy did not technically sell the goodwill of a business (the closely held corporations did)  the Florida courts have interpreted section 542.33(2)(a) in a broad manner in an effort to reach the substance and reality of business transactions, regardless of the form in which they are cast. See Standard Newspapers, Inc. v. Woods, 110 So.2d 397 (Fla. 1959); Aid, Inc. v. Cravero, 286 So.2d 281 (Fla. 4th DCA 1973); Flammer v. Patton, 245 So.2d 854 (Fla. 1971). Further, it is undisputed in this case that Dorminy was an employee of a wholly-owned subsidiary of Hall  a situation expressly covered and foreseen by the covenant not to compete. For both reasons we think the covenant not to compete falls within the umbrella of section 542.33.
Once a covenant not to compete gains the protection of section 542.33, it is generally enforced as written unless the time and area limitations are found to be unreasonable. Sentry Insurance v. Dunn, 411 So.2d 336 (Fla. 5th DCA), rev. denied, 419 So.2d 1196 (Fla. 1982); Tomasello, Inc. v. Los Santos, 394 So.2d 1069 (Fla. 4th DCA 1981); Availability, Inc. v. Riley, 336 So.2d 668 (Fla. 2d DCA 1976); Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239 (Fla. 2d DCA 1973); Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52 (Fla. 3rd DCA 1960); Atlas Travel Service, Inc. v. Morelly, 98 So.2d 816 (Fla. 1st DCA 1957). If a term is found to be unreasonable under the particular circumstances of the parties and the business or employment opportunity being curtailed, a court may refuse to enforce the covenant.[3] However, as the Florida Supreme Court has suggested, the trial court may fashion and apply a reasonable time or area limitation.[4] Each case must be decided on the basis of its own facts and circumstances. Orkin Exterminating Co., Inc. v. Girardeau, 301 So.2d 38 (Fla. 1st DCA 1974), cert. denied, 317 So.2d 75 (Fla. 1975); Auto Club Affiliates.
In this case, there was no testimony or evidence presented to show that the three year time limit was unreasonable, or that it would work any exceptional hardship on Dorminy. Dorminy offered testimony that one or two years would have been a reasonable time limit, based on the one or two year cycle of contract renewals with old customers in the business. He testified that once a customer renewed with the agency, it would probably not switch companies the following year. However, Hall offered testimony that one or two years was not reasonable in this case because Dorminy was such a key management figure and had established such long term relationships and contacts with the Risk group's customers.
It appears to us that either one and one-half years or three years would *158 have been reasonable time limits on competition for a key management employee such as Dorminy. There is no set time limit for enforcement of covenants not to compete, although one to two years are the time limits which have been upheld in Florida against former employees competing with former employers.[5] However, the higher in management and the more key or important the function performed by the employee the longer the time which could be justified for a no-competition covenant. In such a case, a longer time may be needed to protect the former employer's business. Those were clearly factors in this case.
Further, Dorminy received extremely valuable stock in consideration for entering into the contract containing the covenant not to compete. As part of the purchase contract, it was bargained for on both sides, and was hand-drafted for these parties and this transaction.[6] Dorminy was the primary negotiator for the old Risk group. Under the covenant he was permitted to engage in a certain area of the insurance business  operating a bloodstock agency  which the new companies were evidently not going to continue. This clause must have been hand-drafted by Dorminy or his attorney to cover the possibility that he might not continue with the new Risk group indefinitely. We think the time limitations in the agreement must also have been carefully considered and understood by the parties.
Accordingly, we affirm the judgment entered below, but we modify the time periods specified therein from one and one-half years to three years as in the original contract. Therefore, the non-compete covenant became effective December 15, 1982 and remains in effect until December 15, 1985.
AFFIRMED AS MODIFIED.
COBB, C.J., and FRANK D. UPCHURCH, J., concur.
NOTES
[1] The covenant in controversy provided:

From and after the Closing Date and until the later of (i) the fifth anniversary thereof, or (ii) in the case of Mr. William R. Dorminy ... the third anniversary of the final termination of his employment with Purchaser or a subsidiary of Purchaser, none of the Sellers and none of the stockholders ... will participate as a stockholder, partner, joint venturer, proprietor, employee or consultant, or in any other capacity for which any of them is compensated directly or indirectly, or have any other direct or indirect financial interest ... in or in connection with, any business competing directly or indirectly with the present business of any of the Sellers or their respective successors in interest, or Purchaser or any of its subsidiary or affiliated corporations in any geographic area where the Sellers or any such successors in interest or Purchaser or any of its subsidiary or affiliated corporations is now conducting, or during such period conducts, business ...; provided however that nothing in this Agreement shall in any way prevent Mr. William R. Dorminy from engaging at any time in any phase of a bloodstock agency business... . (Emphasis supplied).
Hall executed the contract as Purchaser and Dorminy executed it as a stockholder.
[2] Basically the new Risk group served and handled customers who had self-insurance funds in the workmens compensation field. They also managed one automobile and general liability insurance fund for one customer; and they acted as reinsurance brokers in some instances. Their primary customers were located in Florida and Alabama.
[3] See Sanford Industries, Inc. v. Jaghory, 223 So.2d 77 (Fla. 3rd DCA 1969).
[4] Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974); Flammer v. Patton, 245 So.2d 854 (Fla. 1971).
[5] See Sentry Insurance v. Dunn, 411 So.2d 336 (Fla. 5th DCA 1982); Availability, Inc. v. Riley, 336 So.2d 668 (Fla. 2d DCA 1976); American Building Maintenance Company of Oakland v. Fogelman, 167 So.2d 791 (Fla. 3rd DCA 1964).
[6] See Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239 (Fla. 2d DCA 1973).