951 So.2d 890 (2007)
Elena WHITBY a/k/a Jennifer Ross, James Crystal Licenses, LLC, James Crystal Holdings, Inc., and James Crystal Enterprises, LLC, Appellants,
v.
INFINITY RADIO INC., Appellee.
No. 4D05-3888.
District Court of Appeal of Florida, Fourth District.
January 24, 2007.
Rehearing Denied April 13, 2007.
*891 Robert G. Haile, Jr., of Haile, Shaw & Pfaffenberger, P.A., North Palm Beach, for appellants James Crystal Licenses, LLC, James Crystal Holdings, Inc., and James Crystal Enterprises, LLC.
Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Pompano Beach, for appellant Elena Whitby a/k/a Jennifer Ross.
Alan Rosenthal and Natalie J. Carlos of Adorno & Yoss, LLP, Miami, for appellee.
HAZOURI, J.
James Crystal Licenses, LLC ("Licenses"), James Crystal Holdings, Inc. ("Holdings"), James Crystal Enterprises, LLC ("Enterprises"), and Elena Whitby ("Whitby") ("Appellants") appeal the trial court's entry of partial summary judgment in favor of Infinity Radio Inc. ("Infinity") on the enforceability of a non-compete covenant, the trial court's grant of a directed verdict in Infinity's favor on Appellants' counterclaim for wrongful injunction damages, and a verdict awarding Infinity compensatory and punitive damages. Infinity cross-appeals the trial court's denial of its request for prejudgment interest on its damages award for breach of contract against Whitby and the trial court's granting of Appellants' motion to strike the punitive damages claim against Holdings and Enterprises. We reverse and remand for a new trial.
*892 Whitby, who is known on-air as "Jennifer Ross," was employed as a radio personality by WRMF-FM 97.9 ("WRMF"), in West Palm Beach, for fifteen years, beginning in 1980. On May 19, 1995, Whitby entered into an employment agreement with OmniAmerica Group ("1995 Agreement"), the owner of WEAT-FM 104.3 ("WEAT"). The 1995 Agreement provided for a five-year term and gave WEAT the right to two options to renew for five years each, with a right of first refusal provision. The 1995 Agreement also contained a non-compete covenant, which prohibited Whitby from appearing on radio or television and from working for any competing business within 125 miles of WEAT, for 12 months after leaving WEAT. Further, the 1995 Agreement contained an exclusivity provision, preventing Whitby from discussing or entering into any agreement with any other entity concerning her present or future services during her employment with WEAT.
Whitby started broadcasting at WEAT on September 25, 1995. OmniAmerica sold WEAT to Chancellor Broadcasting, which in turn sold the station to American Radio Systems in 1996. American Radio then merged with CBS Radio in 1998, which has since changed its name to Infinity.
In February 1999, Whitby and Infinity signed an "Amendment to Letter Agreement" ("1999 Amendment"), which gave Whitby a pay increase, but contained language providing that the 1995 Agreement[1] remained in full force and effect and was ratified and confirmed.
The 1995 Agreement was set to expire on September 25, 2000, but in January 2000, Lee K. Strasser, Vice President/General Manager of WEAT, sent a certified letter to Whitby notifying her that Infinity was exercising its option to renew the 1995 Agreement, as amended by the 1999 Amendment, for an additional five-year term. Whitby and Infinity engaged in several months of contract negotiations, which did not result in a new agreement.
In August 2000, Russ Morley, an employee and on-air personality for Holdings, met with Whitby to discuss the possibility of her working as an on-air personality for WRMF, Whitby's former station and a direct competitor of WEAT. James Hilliard, Sr., WRMF's president and owner, asked Morley to meet with Whitby and discuss her potential employment with WRMF. In September 2000, Tim Reever, Vice President of Sales of James Crystal Radio Group, sent a letter to Whitby's attorney outlining prospective terms for Whitby's employment with WRMF.
On September 21, 2000, Holdings executed a three-year employment agreement with Whitby, in which she agreed to broadcast the WRMF morning show. On September 25, 2000, when the 1995 Agreement terminated, Whitby ceased her employment with WEAT. Later that day, she began broadcasting on WRMF. Whitby never advised Strasser of the negotiations or employment agreement with WRMF.
In September 2000, Infinity sued Whitby and Licenses seeking injunctive relief, and simultaneously filed an Emergency Motion for Temporary Injunction. At a hearing, the trial court denied the temporary injunction, finding that Infinity failed to establish that it was an assignee or *893 direct successor to OmniAmerica, that the 1999 Amendment executed by Infinity and Whitby failed to expressly incorporate the 1995 Agreement, and that Infinity failed to carry its burden of substantial likelihood of success on the merits as to the enforceability of the non-compete covenant. The trial court found further that the non-compete covenant did not expressly authorize enforcement by OmniAmerica's assignee or successor, as required by section 542.335(1)(f)2.,[2] Florida Statutes, and the 1999 Amendment between Infinity and Whitby contained no restrictive covenant.
In November 2000, Infinity amended its complaint to add a count for breach of contract damages against Whitby (Count I) and a count against Licenses for tortious interference with the contract between Whitby and Infinity (Count II). The claim for injunctive relief remained as Count III. Infinity later amended its complaint to add a claim for punitive damages against Licenses. Infinity also later amended its complaint to join Holdings and Enterprises as defendants.
Infinity appealed the order denying its Emergency Motion for Temporary Injunction to this court. See Infinity Radio Inc. v. Whitby, 780 So.2d 248 (Fla. 4th DCA), rev. denied, 796 So.2d 539 (Fla.2001). This court reversed the trial court, reasoning that:
The 1999 "amendment" was not an assignment, but rather, a brand new agreement between Whitby and Infinity that incorporated all provisions of the 1995 agreement by reference. Therefore, and notwithstanding the provisions of section 542.335(1)(f)(2), Infinity, as party to the new agreement, was entitled to enforce the noncompete clause against Whitby.
Id. at 250.
Infinity moved the trial court to issue a temporary injunction pursuant to this court's mandate. In response, Whitby and Licenses filed an emergency motion to stay entry of the injunction pending clarification of the scope of the injunction. After a hearing, the trial court determined that this court's decision "by implication necessarily decided that the party seeking enforcement had established prima facie, that the specific non-compete covenant contained in the 1995 Agreement is reasonably necessary to protect the legitimate business interest or interests of the Plaintiff." The trial court went on to conclude that: "However, the Defendant did not have the opportunity, either in the lower court before appeal or as part of the appeal, to establish that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect Plaintiff's established legitimate business interest or interests."
The trial court entered a temporary injunction in the form originally contained in the 1995 non-compete covenant, but "without prejudice to consider properly raised issues concerning the reasonable scope of the injunction during the course of this litigation." The injunction expired in twelve months, as contractually agreed to by the parties. The temporary injunction was extended to Licenses by order dated May 15, 2001.
Once the injunction was entered, seven months after she began broadcasting at WRMF, Whitby remained off the air for *894 one year. However, she appeared at a promotional event, sponsored in part by WRMF, the day after the injunction. Infinity sought to have her held in contempt for violating the injunction. After several hearings, the trial court found Whitby guilty of indirect civil contempt because she participated in WRMF's promotional event, and because she continued to receive regular, periodic payments from WRMF. Whitby was ordered to pay a $100,000 fine to Infinity, but the fine was suspended on the condition that she commit no further violations.
Infinity moved to liquidate the $100,000 sanction against Whitby, alleging that payments she received from WRMF during the expired injunction period, which were characterized as a loan, nonetheless violated the injunction. Hearings were held before a successor judge, who acknowledged that the previous judge had specifically declined to hold that a loan would violate the injunction until an evidentiary hearing could be held and the issue fully briefed. The successor judge acknowledged also that the injunction had expired, but ordered Whitby to pay the $100,000. The order directed that the fine be paid to the court registry, rather than Infinity.[3]
In September 2003, Appellants filed a joint amended answer and affirmative defenses to Infinity's third amended complaint, including a counterclaim against Infinity. Their common affirmative defenses included a defense that Infinity was barred from seeking damages because it had elected its remedy in obtaining an injunction against Whitby; that Infinity could not recover damages for the one-year period in which Whitby was enjoined, since any alleged damages would have been remedied by the injunction; and that the option clause in the employment agreement was unenforceable for lack of a material term. Whitby also pled several separate affirmative defenses, including that the restrictive covenant was (1) unreasonable as to area, duration, and scope, and (2) an illegal restraint of trade. In Count III of Appellants' counterclaim, they sought damages for wrongful injunction.
In September 2004, Infinity filed a motion for partial summary judgment and motion to strike Appellants' affirmative defenses relating to the enforcement of the non-compete covenant and temporary injunction.[4] After a hearing on the motions on December 20, 2004, the court entered several orders on January 27, 2005. The trial court ruled that Infinity can seek both injunctive relief and damages. The trial court ruled further that the 1999 Amendment combined with the 1995 Agreement to form a new, legally enforceable non-compete provision, citing the law of the case as the basis for its ruling. Appellants requested reconsideration and clarification of the trial court's ruling that the non-compete covenant was valid and enforceable as written. The trial court ruled that:
Notwithstanding whether the decisions rendered by the Fourth District Court of Appeal constitute "law of the case" on the enforceability of the covenant not to compete in the 1995 Letter Agreement, as incorporated by the 1999 Amendment, based upon the evidence that Defendants presented to the Court and have presented in the past 4 1/2 years over multiple hearings, the Court finds *895 that the covenant not to compete is enforceable by Infinity and is not overly broad in geographic area, scope or duration.
A jury trial was held from March 28, 2005 through April 8, 2005. At the end of Appellants' case, Infinity moved for a directed verdict on Count III of the counterclaim, which sought damages for wrongful issuance of the temporary injunction. The trial court granted this motion, striking Appellants' counterclaim for wrongful injunction.
The jury found that Whitby breached her contract, and as such, was liable to Infinity for $1 million in compensatory damages. The jury found further that Licenses, Holdings, and Enterprises tortiously interfered with the Whitby-Infinity contract, and awarded Infinity $1 million from each of the three companies. Finally, the jury awarded $13.2 million in punitive damages against Licenses.
Appellants filed a motion for remittitur and a motion for judgment notwithstanding the verdict, or alternative motion for new trial. After a hearing, the trial court denied Appellants' motions but remitted the total compensatory damages to $2.3 million, to be divided among Appellants pro rata ($575,000 each). The trial court did not disturb the punitive damages award. Appellants objected to the remittitur.
The trial court entered final judgment on September 2, 2005, against each Appellant in the amount of $575,000, severally, for a total of $2.3 million in compensatory damages. The judgment also assessed punitive damages of $13.2 million against Licenses.

Infinity's Motion for Partial Summary Judgment on Enforceability of Non-Compete Covenant
Appellants' first argument on appeal is that the trial court erred in granting Infinity's motion for partial summary judgment on the enforceability of the non-compete covenant. We agree.
"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (citing Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58 (Fla. 1st DCA 1999)). The standard of review of an order granting summary judgment is de novo. Aberdeen, 760 So.2d at 130.
The trial court asserted two alternative bases for granting summary judgment in favor of Infinity on this issue: (1) the law of the case doctrine, and (2) the non-compete covenant was not unreasonable or overly broad in geographic area, scope, and duration. At the hearing held to reconsider its previous ruling, the trial court noted: "As far as the clarification is concerned, if, in fact, the appellate courts find that there wasn't law of the case, I'm ruling based upon the evidence that has been presented to me over multiple hearings that the covenant not to compete is an enforceable clause within the agreement." Later, over Appellants' objection, the trial court instructed the jury that as a matter of law, the non-compete provision was valid and enforceable by Infinity against Whitby.
Appellants correctly argue that the law of the case doctrine does not bar the trial court's consideration of the enforceability of the non-compete covenant, as a result of this court's decision in Infinity. Appellants rely on Florida Department of Transportation v. Juliano, 801 So.2d 101 (Fla.2001) and Kozich v. DeBrino, 837 So.2d 1041 (Fla. 4th DCA 2002).
In Juliano, the Florida Supreme Court recognized that the law of the case doctrine is "`limited to rulings on questions of law actually presented and considered on a former appeal.'" 801 So.2d at *896 106 (citing U.S. Concrete Pipe v. Bould, 437 So.2d 1061, 1063 (Fla.1983)) (emphasis in original). The Juliano court further advised that "a lower court is not precluded from passing on issues that `have not necessarily been determined and become law of the case.'" 801 So.2d at 106 (citing Greene v. Massey, 384 So.2d 24, 27 (Fla. 1980)). In Infinity, this court held only that the trial court misinterpreted the law in denying Infinity's motion for temporary injunction on the basis that Infinity could not enforce the non-compete covenant because it was not a party to the original agreement. 780 So.2d at 250. This court did not consider whether the non-compete covenant was reasonably necessary to protect a legitimate business interest, or whether the covenant was overly broad in scope. Moreover, on remand, the initial trial judge in this case, Judge Brown, entered the injunction "without prejudice to consider properly raised issues concerning the reasonable scope of the injunction during the course of this litigation." Thus, Juliano dictates that the law of the case doctrine did not preclude the trial court from reaching these issues when ruling on Infinity's motion for partial summary judgment on the enforceability of the non-compete covenant.
Further, in Kozich, this court held:
A trial court's findings on a preliminary injunction do not constitute "law of the case" on final hearing. See Lorie v. C.L.N., 757 So.2d 610, 611 (Fla. 3d DCA 2000). The findings of fact and conclusions of law made at a preliminary injunction hearing are not binding on the court on final hearing, where the parties present their full case to the court. See Ladner v. Plaza Del Prado Condo. Ass'n, 423 So.2d 927, 929 (Fla. 3d DCA 1982). "[T]he affirmance of a temporary injunction on appeal determines only that a proper showing was made at the time the injunction was applied for." El Segundo Original Rey de la Pizza Cubana, Inc. v. Rey Pizza Corp., 682 So.2d 697, 697 (Fla. 3d DCA 1996) (citations omitted).
Kozich, 837 So.2d at 1043-44. Thus, although this court reversed the trial court's denial of Infinity's motion for a temporary injunction, our ruling on the non-final appeal has no preclusive effect and is not the law of the case.
Accordingly, the trial court erred in finding that the law of the case doctrine barred its consideration of whether the non-compete covenant was reasonably necessary to protect Infinity's legitimate business interest, or whether the covenant was unreasonable in scope.
We consider next whether the trial court erred in finding alternatively that "the covenant not to compete is enforceable by Infinity and is not overly broad in geographic area, scope or duration." We agree with Appellants that the trial court erred in holding the non-compete covenant enforceable on summary judgment without allowing Appellants to present evidence as to the covenant's reasonableness and scope.
Section 542.335(1), Florida Statutes (1999), permits enforcement of contracts that restrict or prohibit competition, but only "so long as such contracts are reasonable in time, area, and line of business. . . ."[5] The statute also requires that *897 the party seeking enforcement "shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." § 542.335(1)(b), Fla. Stat. (1999). It provides further that: "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." Id. Section 542.335(1)(c) provides:
A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests. If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.
§ 542.335(1)(c), Fla. Stat. (1999).
Whether a non-compete covenant is reasonable or overly broad is a question of fact for the trial court. See Orkin Exterminating Co. v. Girardeau, 301 So.2d 38, 40 (Fla. 1st DCA 1974), cert. denied, 317 So.2d 75 (Fla.1975) (recognizing that "[w]hat is a reasonable area is a factual matter to be determined in each [non-compete] case"); Sarasota Beverage Co. v. Johnson, 551 So.2d 503, 507 (Fla. 2d DCA 1989) (citing Dorminy v. Frank B. Hall Co., Inc., 464 So.2d 154 (Fla. 5th DCA 1985)) (concluding that "[t]he facts of each [non-compete] case determine whether the area and time restrictions are reasonable"). "[A] trial court may not resolve disputed issues of fact when considering a motion for summary judgment." Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). Moreover, most of the evidence in this case concerning Infinity's legitimate business interests and the broadness of the non-compete covenant is by way of testimony that necessarily gives rise to questions of credibility, determinations of which are inappropriate on summary judgment. See Kuczkir v. Martell, 480 So.2d 700, 701 (Fla. 4th DCA 1985).
Therefore, the trial court erred in granting Infinity's motion for partial summary judgment and concluding that the non-compete covenant was enforceable, without conducting an evidentiary hearing to hear testimony and receive evidence, particularly in light of Judge Brown's earlier assurance that Whitby would be allowed to present such evidence during the course of the litigation. As such, we find that a new trial is warranted.
We also reverse the trial court's decision to grant Infinity's motion to direct a verdict on Appellants' counterclaim for wrongful injunction damages because if the trial court determines at the evidentiary hearing that the non-compete clause was unenforceable, Appellants should be able to present evidence at trial that the injunction was wrongfully entered.

Compensatory Damages
Because we are remanding this case for a new trial, we find it necessary to provide guidance to the trial court on Infinity's claim for compensatory damages.
Prior to trial, Appellants filed a motion in limine to "prohibit the introduction at trial of evidence or testimony concerning the alleged causation and speculative nature of Infinity's damages. . . ." The motion alleged that Infinity's claim of lost profits was highly speculative and not directly caused by Whitby's departure from *898 WEAT to join WRMF. The motion asserted also that the methodology of Dr. Mark Fratrick, Infinity's damages expert, was questionable. Further, the motion argued that Infinity was attempting to obtain a double recovery by asserting a claim for both lost profits and lost value.
After a hearing on March 3, 2005, the trial court entered an order on the motion in limine. The trial court granted the motion with respect to the lost value issue only, concluding:
Based upon Infinity's stipulation that it seeks to recover only lost profits and not diminution of value of WEAT, and the Court's determination that lost value is not a relevant issue in this case, Infinity may not present evidence of diminution in value at trial unless it first proffers such evidence to the Court for relevancy purposes.
Infinity alleged and attempted to prove at trial that Whitby breached her contract with Infinity, and that Licenses, Holdings, and Enterprises tortiously interfered with this contract, causing damages in the form of lost profits. Appellants argue that Infinity's evidence of damages was speculative and conjectural in nature. We agree.
In Forest's Mens Shop v. Schmidt, 536 So.2d 334 (Fla. 4th DCA 1988), this court recognized:
When a party seeks lost future profits based upon a breach of contract or other wrong, the party must prove that the lost profits were a direct result of the defendant's actions and that the amount of the lost profits can be established with reasonable certainty. Difficulty in proving damages or uncertainty as to the amount will not prevent recovery as long as it is clear that substantial (rather than merely nominal) damages were suffered as a result of the wrong, and the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount. However, an award of lost profits cannot be based on mere speculation or conjecture.
536 So.2d at 336 (citations omitted). Infinity did not satisfy its burden to show that its lost profits were a direct result of Appellants' actions, or that the amount of those lost profits could be determined with reasonable certainty.
Dr. Fratrick assumed that all variables that impacted the revenues at WEAT affected each of the day parts equally and that the only reason the morning drivetime day part decreased, while the other day parts increased, was because Whitby moved to WRMF. However, this assumption is speculative and unsupported. Dr. Fratrick failed to consider numerous external variables, which by their very nature affected only the morning day part, and rendered Dr. Fratrick's conclusion that WEAT's lost profits were a direct result of Whitby's departure questionable at best. Examples of the variables Fratrick did not consider are: (1) the fact that Whitby's longtime co-host, Kevin Kitchens, died suddenly on February 3, 1999, (2) the competence and performance of Joe Martelle, Whitby's replacement, (3) the introduction of a new morning team at WOLL (another morning show competitor), (4) whether advertisers decreased their expenditures as a result of Whitby going to WRMF and transferred their advertising to WRMF, and (5) ranking reports showing that both WRMF and WEAT declined in audience share after Whitby left WEAT and joined WRMF, and that another station, WKGR, won the number one rated position in the market by 2003 and 2004. Notably, Mark Hubbard, Appellants' damages expert, testified that there are over seventy factors which affect radio station revenues, and that it is not possible in this case to merely isolate one as the cause of a radio station's alleged revenue decline. Thus, without considering the impact of these external variables on Infinity's profits during the period in question, Dr. Fratrick's *899 testimony failed to establish that the lost profits were the direct result of Whitby's actions in leaving the station.
The speculative nature of Dr. Fratrick's testimony is compounded further by his calculation of damages for a period of five years, i.e., from September 25, 2000 through September 24, 2005, a date about five months after trial. During the proffer, Dr. Fratrick was unable to articulate any justification for his use of the five-year period. The decision to calculate lost profits for five years was arbitrary:
COUNSEL: How did you get to five years?
DR. FRATRICK: There was a time period of a contract and the  during the four plus years I had examined it that had already occurred, I continued to see a decrease in the revenue generated in the morning drive-time day part relative to the other day parts and continues to this day as well as looking at the ratings performance of the morning day part.
COUNSEL: Based on your analysis, would the damage continue beyond five years?
DR. FRATRICK: It could even continue past five years.
COUNSEL: So the fact that you looked at a five-year period didn't control whether or not it was just five years' worth of damages?
DR. FRATRICK: No. It could be even longer.
COUNSEL: How did you get to damages for that entire five-year period?
DR. FRATRICK: I examined the relative performance of the morning drivetime day part, compared that and see what it would have performed if it performed as well as the other day parts at the station.
COUNSEL: Have you looked at actual data?
DR. FRATRICK: I looked at actual data, yes.
COUNSEL: That confirms your conclusions?
DR. FRATRICK: Yes, it does.
COUNSEL: And in the course of your business, do you forecast the performance of  financial performance of radio stations?
DR. FRATRICK: It's a key part of my business, yes.
COURT: Mr. Arrastia, you're still not understanding my issue. My issue is the five-year period. Why is it he gets to say there's a five-year contract? That's the legal argument from you, not from the witness. Why does he get to say there was a five-year contract?
COUNSEL: Your Honor, I wouldn't proffer that he would say there's a five-year contract.
COURT: That's what he just said.
. . .
COUNSEL: So does the fact  does your analysis rely on the fact that there was a five-year contract?
DR. FRATRICK: No. It relies on the relative point of impact of the two different groups of day parts over the time period I looked at. It could have been six, seven years. It could have been ten years.
COUNSEL: But you just stopped at five?
DR. FRATRICK: Yes.
Thus, the speculative and conjectural nature of Fratrick's methodology, combined with the numerous critical variables he failed to consider, renders it difficult for the trier of fact to determine (1) that the lost profits over a period of five years were the direct result of the breach and tortious interference, and (2) that the lost profits can be ascertained with any reasonable certainty. See Forest's Mens Shop, 536 So.2d at 336. At least two Florida cases have rejected lost profits calculations that failed to consider other factors which *900 might have influenced the drop in earnings. See Rooney v. Skeet'r Beat'r of Southwest Fla., Inc., 898 So.2d 968, 969 (Fla. 2d DCA 2005); A.R. Holland, Inc. v. Wendco Corp., 884 So.2d 1006, 1008 (Fla. 1st DCA 2004). Moreover, "`no weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning.'" M.A. Hajianpour, M.D., P.A. v. Khosrow Maleki, P.A., 932 So.2d 459, 464 (Fla. 4th DCA 2006) (quoting Div. of Admin. v. Samter, 393 So.2d 1142, 1145 (Fla. 3rd DCA 1981)). Appellants' objection to Dr. Fratrick's opinion on loss of profits should have been sustained. Therefore, the trial court erred in permitting the jury to consider Dr. Fratrick's testimony in calculating Infinity's claim for compensatory damages.
Although we find that Dr. Fratrick's testimony was speculative and conjectural on the issue of lost profits, there was substantial competent evidence to support some compensatory damages. Appellants argue that Infinity elected its remedy by obtaining a temporary injunction and is, therefore, precluded from claiming any compensatory damages. Nonetheless, this argument ignores the fact that there was evidence of a seven-month period before the injunction was entered during which Whitby was on-air for WRMF and WRMF aggressively advertised her move to its station, including, inter alia, holding a press conference the day Whitby left WEAT and distributing flyers to the public announcing the news. In addition, there was testimony that WEAT lost several advertising accounts totaling approximately $400,000 to $600,000 as a result of Whitby's departure. Therefore, on remand, Infinity is not precluded from once again attempting to prove compensatory damages. However, there must be substantial competent evidence directly linking those damages to Appellants' activities during the seven months between Whitby's departure from WEAT and the trial court's entry of the temporary injunction.
Appellants argue next that the trial court erred in entering the judgment against them in the amount of $575,000 each, for a total compensatory damages award of 2.3 million dollars.[6] We agree.
Appellants rely on Designs for Vision, Inc. v. Amedas, Inc., 632 So.2d 614 (Fla. 2d DCA), rev. denied, 639 So.2d 975 (Fla. 1994). There, the Second District concluded that "When a party breaches a contract . . . and the breach results from the tortious interference of another party . . . the proper procedure is to make the two jointly and severally liable for the damages resulting from the breach." Id. at 615 (citations omitted). The court reached this conclusion because "[n]o evidence was admitted or argued regarding independent damages arising from the tortious interference claim. . . ." Id. at 614-15.
Infinity argues that it presented substantial evidence to show that Licenses, Enterprises, and Holdings "did more than just induce Whitby to breach her employment agreement." Infinity claims the evidence showed that they capitalized on Whitby's defection and set out to harm WEAT's ratings in a malicious manner by engaging in an aggressive advertising campaign to announce Whitby's move. However, Infinity never presented evidence to establish that it sustained damages from the alleged tortious interference independent from the damages it sustained as a result of the alleged breach of the non-compete covenant.
Infinity also claims that the jury found that the tortious conduct of Licenses, Holdings, and Enterprises directly caused Infinity to lose $3 million in lost profits, *901 while Whitby's conduct caused $1 million in lost profits. The verdict form asked the jury to indicate the amount of damages "suffered by Infinity as a result of Whitby's breach of the Employment Agreement," which the jury found to be $1 million. The question concerning Licenses, Enterprises, and Holdings asked: "What is the amount of compensatory damages, if any, which you assess against the following Defendants as a result of the tortious interference?" The jury listed $1 million each for Licenses, Holdings, and Enterprises. However, Amedas instructs that only a judgment of $1 million, remitted to $575,000, entered against Appellants jointly and severally, would be appropriate absent evidence of independent damages to Infinity arising out of the alleged tortious interference. See 632 So.2d at 614-15.
Because we are reversing on the issue of liability and damages, we necessarily reverse the punitive damages award, but we do not reach the question of whether punitive damages were unwarranted and excessive. Similarly, we need not reach the issues on cross-appeal.
Reversed and Remanded.
KLEIN and MAY, JJ., concur.
NOTES
[1] The 1999 Amendment actually refers to a 1997 Agreement, but it appears to be referring to the 1995 Agreement. See Infinity Radio Inc. v. Whitby, 780 So.2d 248, 249 n. 1 (Fla. 4th DCA 2001) (noting: "This reference to 1997 appears to be a typographical error, as the parties recognized that Whitby entered into only two agreements at WEAT-one in 1995, and another in 1999. Other provisions in the 1999 amendment support that the initial reference to 1997 was erroneous.").
[2] Section 542.335(1)(f)2., Florida Statutes (1999), provides:

(f) The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided: . . . 2. In the case of an assignee or successor, the restrictive covenant expressly authorized enforcement by a party's assignee or successor.
[3] The trial court stayed enforcement, while Whitby appealed. This court affirmed that decision without opinion. See Whitby v. Infinity Radio, Inc., 907 So.2d 543 (Fla. 4th DCA 2005). On February 6, 2006, the trial court entered a final sanction order requiring Whitby to pay the $100,000 to Infinity instead of the court registry. Whitby appealed again to this court in Case No. 4D06-660, which is still pending.
[4] This was one of ten motions for partial summary judgment filed by Infinity.
[5] Appellants argue that the trial court erred in applying section 542.335, and not its predecessor, section 542.33, which was in effect when the 1995 Agreement was entered. However, this argument fails because this court held specifically in Infinity that the 1995 Agreement combined with the 1999 Amendment to form a new agreement. 780 So.2d at 250. Further, this court did not find error in the trial court's application of section 542.335. Infinity, 780 So.2d at 249-50.
[6] This was the remitted amount. Appellants objected to this ruling below.