DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RAUCH, WEAVER, NORFLEET, KURTZ & CO., INC.,** a Florida
corporation,
Appellant,

v.

**AJP PINE ISLAND WAREHOUSES, INC.,** a Florida corporation,
**GARNAN ENTERPRISES LLC,** a Florida limited liability company, and
**NANCY LEGAULT,** individually,
Appellees.

Nos. 4D20-352 and 4D20-417

[March 17, 2021]

Consolidated appeals from the Circuit Court for the Seventeenth
Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No.
CACE 18-021409 (02).

Craig J. Trigoboff of Gunster, Yoakley & Stewart, P.A., Fort Lauderdale,
for appellant.

John M. Bernazzoli, Hollywood, for appellee Nancy Legault.

GROSS, J.

Rauch, Weaver, Norfleet, Kurtz & Co. ("the Broker") appeals a final
judgment entered in favor of Nancy Legault ("Legault") in the Broker's
action for a breach of a confidentiality agreement related to a listing of real
property. We affirm the final judgment, concluding that the trial court
properly relied on section 542.335, Florida Statutes (2014).

### *The Broker's Listing Agreement with the Seller*

In October 2014, the Broker entered into a listing agreement with AJP
Pine Island Warehouses (the "Seller"), granting the Broker the exclusive
right to procure a purchaser for the Seller's commercial warehouse
property. The term of the listing agreement was six months. If the Broker
obtained a buyer for the property during the term of the listing agreement,
the commission was to be paid by the Seller, not the buyer.

### The Confidentiality Agreement Between the Broker and Legault

The Broker's agent contacted Legault to tell her that the property was on the market. She expressed interest in purchasing it. The agent was familiar with Legault because he had been the listing agent when one of Legault's companies purchased the warehouse next door to the property.

Before the agent would send Legault any financial information about the property, the agent asked her to sign a confidentiality agreement with the Broker. The confidentiality agreement stated in relevant part:

> By acknowledgment of receipt of this confidential information . . . , you hereby agree:
>
> 1. That you will hold and treat it in the strictest of confidence, and that you will not, directly or indirectly, disclose this information to any other person, form or entity without prior authorization of the listing agent, and:
>
> 2. That you will not contact or negotiate in any way with the owners of the property as long as title to the properties are held by the current owners, and; . . .

Legault hand wrote her name and contact information under the signature line and returned the agreement to the Broker in October 2014. She later testified that she intended to be bound by the agreement.

### The Expiration of the Listing Agreement

The asking price for the property was $1,595,000. After receiving confidential financial information regarding the property, Legault offered $1.2 million in October 2014, which the Seller rejected. Between October 2014 and April 2015, Legault had no further negotiations with the Seller or anyone representing the Seller. The Broker's listing agreement with the Seller expired in April 2015.

### The Sale of the Property to Legault's Company through a New Broker

The Seller then engaged another broker, Jay Goldman, to manage the property and work on selling it. In June or July 2015, Goldman contacted Legault to gauge her interest in purchasing the property. On July 28, 2015, Legault submitted a letter of intent to the Seller, offering to purchase

the property for $1.2 million.  The Seller made a counteroffer that Legault rejected.

The Seller subsequently made improvements to the property and increased the rents it was collecting.  In March 2016, Goldman and Legault began negotiating again.   The negotiations culminated in Legault's company, Garnan Enterprises, LLC ("Garnan"), purchasing the property from the Seller for $1.4 million in May 2016.

### *The Lawsuit – Pleadings Stage*

After the Broker learned of the sale, the Broker sued the Seller, Legault, and Garnan.  In the operative complaint, the Broker asserted the following counts: (1) a claim against the Seller for breach of the listing agreement; (2) a claim against Legault for breach of the confidentiality agreement; and (3) a claim against Garnan for unjust enrichment.

In the count against Legault, the Broker alleged that Legault "breached the Confidentiality Agreement (and specifically Paragraph 2 of same)" by negotiating directly with the Seller or its agent, excluding the Broker from the process, and "then causing Garnan to purchase the Property without paying the earned commission, even though [the Broker] was the procuring cause of the sale."  The Broker sought damages against Legault of "not less than $84,000.00," which was the amount of commission the Broker would have earned on the sale of the property.  Significantly, the count against Legault failed to allege either: (1) that one or more legitimate business interests justified the restrictive covenant; or (2) that the contractually-specified restraint was "reasonably necessary to protect" those interests.

Legault answered the operative complaint and asserted five affirmative defenses, none of which specifically mentioned section 542.335, Florida Statutes (2014).

### *The Motions for Summary Judgment*

Following discovery, the Broker moved for summary judgment against Legault on the issue of liability, arguing that (1) the confidentiality agreement was a valid contract, (2) Legault breached the confidentiality agreement through her "admitted use of financial information and on-going negotiations" with the Seller after the listing agreement expired, and (3) the Broker "suffered damages as a proximate result of [Legault's] material breaches," as the Broker "did not receive its due commission" when Legault's company purchased the property.

Legault's response in opposition to summary judgment contended, among other things, that the confidentiality agreement was a restrictive covenant that was void under section 542.335, Florida Statutes, because she did not sign the confidentiality agreement and because the Broker failed to plead or prove that the restrictive covenant was reasonably necessary to protect any legitimate business interests.

Meanwhile, the Broker and the Seller filed cross-motions for summary judgment on the Broker's claim against the Seller for breach of the listing agreement.

### *The Trial Court's Denial of the Broker's Motions for Summary Judgment*

At the summary judgment hearing, the Broker objected that Legault's argument about restraints of trade "was never pled as an affirmative defense." As a result, the Broker maintained that Legault could not rely on her restraint-of-trade argument to avoid summary judgment.

Following the hearing, the trial court denied the Broker's motion for summary judgment against Legault. The trial court ruled that: (1) the confidentiality agreement involved restrictive covenants governed by section 542.335, Florida Statutes; (2) the confidentiality agreement was not signed by Legault, which was fatal to its enforcement; (3) Legault did not breach paragraph 1 of the confidentiality agreement because there was no evidence in the record that she disclosed the Seller's confidential information; (4) paragraph 2 of the confidentiality agreement was "indefinite in time which would otherwise render the restriction void," but the court had the authority under section 542.335(1)(c) to construe the provision more narrowly in order to protect the Broker's legitimate business interests; (5) a reasonable time limit for the duration of the restrictive covenant to protect the Broker's legitimate business interests would be the length of the listing agreement; (6) Legault did not violate paragraph 2 of the confidentiality agreement during the term of the listing agreement; and (7) the Broker's damages were too speculative. However, the trial court's order did not enter judgment in favor of Legault.

On the same day, the trial court entered a summary final judgment in favor of the Seller, ruling that no commission was due to the Broker because the listing agreement "naturally terminated at the end of the 6-month term, and all rights and obligations thereunder between [the] Broker and [the Seller] concluded on April 7, 2015."

### *The Entry of the Final Judgment in Favor of Legault*

Although Legault had not moved for summary judgment, the Broker sent the trial court a proposed final judgment in favor of Legault. The Broker requested the trial court's entry of the proposed final judgment so that the Broker's appellate rights would vest and the Broker could seek appellate review of the trial court's order denying the Broker's motion for summary judgment. Accordingly, the trial court entered final judgment in favor of Legault.[1]

### *The Trial Court Properly Relied on Section 542.335 in Entering Summary Judgment*

The Broker first argues that the circuit court erred in denying the Broker's motion for summary judgment, where the court relied on the unpled affirmative defenses under section 542.335.

We reject that argument because the statute is not merely a catalog of affirmative defenses, but a framework for the analysis of restrictive covenants in Florida.

"An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist." *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010). "The defendant has the burden of proving an affirmative defense." *Id.*

"An affirmative defense is waived unless it is pleaded." *Johnston v. Hudlett*, 32 So. 3d 700, 704 (Fla. 4th DCA 2010). Thus, "[f]ailure to raise an affirmative defense prior to a plaintiff's motion for summary judgment constitutes a waiver of that defense." *Kissimmee Util. Auth. v. Better Plastics, Inc.*, 526 So. 2d 46, 48 (Fla. 1988) (quoting *Wyman v. Robbins*, 513 So. 2d 230, 231 (Fla. 1st DCA 1987)). In other words, a defendant may not "raise an unpled affirmative defense as a basis for resisting a motion for summary judgment." *Capotosto v. Fifth Third Bank*, 230 So. 3d 891, 892 (Fla. 4th DCA 2017).

Important in this case is the principle that an essential element of the plaintiff's cause of action is not an affirmative defense. *Commerce P'ship*

---

[1] The Broker appealed the final judgments in favor of Legault and the Seller. The appeals were consolidated, but the Broker voluntarily dismissed its appeal against the Seller.

*8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. 4th DCA 1997). "[T]he burden of proof is on the plaintiff to establish by a preponderance of the evidence each element of his cause of action." *Sharp v. Long*, 283 So. 2d 567, 568 (Fla. 4th DCA 1973).

The three elements of a breach-of-contract action are: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). A valid contract, in turn, is generally composed of four basic elements: offer, acceptance, consideration, and sufficient specification of essential terms. *Jericho All-Weather Opportunity Fund, LP v. Pier Seventeen Marina & Yacht Club, LLC*, 207 So. 3d 938, 941 (Fla. 4th DCA 2016).

When a breach-of-contract action is based upon enforcement of a restrictive covenant, however, the plaintiff must plead and prove additional elements in order to establish that the restrictive covenant is a valid restraint of trade. *See* § 542.335, Fla. Stat. (2014). "Section 542.335 does not protect covenants 'whose sole purpose is to prevent competition per se' because those contracts are void against public policy." *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 785 (Fla. 2017). Instead, under Florida law, "a contract providing restrictions on competition must involve a legitimate business interest as defined by statute to be enforceable." *Id.* at 779.

"Section 542.335 contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants in Florida based on an 'unfair competition' analysis." *Henao v. Prof'l Shoe Repair, Inc.*, 929 So. 2d 723, 726 (Fla. 5th DCA 2006). "[T]he term 'restrictive covenants' includes all contractual restrictions upon competition, such as noncompetition/nonsolicitation agreements, confidentiality agreements, exclusive dealing agreements, and all other contractual restraints of trade." *Id.*

Section 542.335 replaced section 542.33, which the legislature repealed "with respect to restrictive covenants entered into or having an effective date on or after July 1, 1996." § 542.331, Fla. Stat. (2014). In enacting section 542.335, the legislature rejected the "contract approach" to enforcement of contractual restrictions on competition and replaced it with an approach based on legitimate business interests. *Henao*, 929 So. 2d at 726.

Under section 542.335, three requirements must be satisfied for a restrictive covenant to be enforceable: (1) the restrictive covenant must be "set forth in a writing signed by the person against whom enforcement is

6

sought"; (2) the party seeking to enforce the restrictive covenant "**shall plead and prove** the existence of one or more legitimate business interests justifying the restrictive covenant"; and (3) the party seeking to enforce the restrictive covenant "**shall plead and prove** that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." § 542.335(1)(a)–(c), Fla. Stat. (2014) (emphasis added).

"Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." § 542.335(1)(b), Fla. Stat. (2014). However, "[s]ection 542.335 commands courts to modify, or blue pencil, a non-competition agreement that is 'overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest,' instructing courts to 'grant only the relief reasonably necessary to protect such interest.'" *White*, 226 So. 3d at 785 (quoting § 542.335(1)(c), Fla. Stat.).

Here, the trial court properly relied upon section 542.335 to analyze the enforceability of the confidentiality agreement, notwithstanding Legault's failure to plead the statute as an affirmative defense. Section 542.335 sets forth elements that the plaintiff, as the party seeking enforcement of the restrictive covenant, has the initial burden to "plead and prove." Under the section 542.335 framework, a restrictive covenant is void unless it is reasonably necessary to protect a legitimate business interest. The threshold requirements of section 542.335 are essential elements in any cause of action concerning enforcement of a restrictive covenant. An affirmative defense, by contrast, is an issue on which the defendant bears the burden of proof. Thus, with a possible exception not applicable here,[2] section 542.335 factors are not affirmative defenses in an action for breach of contract based on an alleged violation of a restrictive covenant.

---

[2] Admittedly, section 542.335(1)(c) creates a burden-shifting framework whereby "[i]f a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests." While this narrow aspect of section 542.335(1)(c) could arguably be viewed as an affirmative defense, it was unnecessary for Legault to plead it in this case because the Broker failed to meet its initial burden of pleading that the contractually-specified restraint was reasonably necessary to protect any legitimate business interest justifying the restriction.

7

Because section 542.335 sets forth essential elements of the plaintiff's case, the trial court did not err in relying on the statute when it denied the Broker's motion for summary judgment.

The Broker relies upon case law holding that the illegality of a restrictive covenant under section 542.335's predecessor, section 542.33, is an affirmative defense. *See Miami Elecs. Ctr., Inc. v. Saporta*, 597 So. 2d 903, 904 (Fla. 3d DCA 1992) ("[W]e reject the defendants' contentions that (a) the non-compete provision of the agreement was illegal and therefore unenforceable under Section 542.33, Florida Statutes (1991), . . . . The defendants did not plead illegality as an affirmative defense, and the issue was not tried below by consent; accordingly, the defendants have waived this defense."); *see also Tomasello, Inc. v. de Los Santos*, 394 So. 2d 1069, 1071 (Fla. 4th DCA 1981) (applying section 542.33's predecessor statute, section 542.12, and holding that the trial court should not have considered the reasonableness of the geographical area covered by the noncompetition clause "when the issue of reasonableness was not raised by the pre-trial stipulation or pleadings nor tried by the consent of the parties").[3]

The cases cited by the Broker are distinguishable because the predecessors to section 542.335 do not contain any language explicitly requiring the plaintiff to "plead and prove" certain elements in an action to enforce a restrictive covenant. Thus, those cases fit under the general rule that the illegality of an agreement is an affirmative defense. By contrast, the plain language of section 542.335 compels a different conclusion in this case.[4]

---

[3] The Broker also relies upon *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890 (Fla. 4th DCA 2007), but that case does not hold that section 542.335 is an affirmative defense. Instead, *Whitby* simply noted, as a factual matter, that the illegality of the restrictive covenant had been pled as an affirmative defense in that case. *Id.* at 894. *Whitby* did not decide the legal issue of whether the requirements of section 542.335 should be characterized as an affirmative defense.

[4] The Broker also argues that the trial court erred in entering final judgment in favor of Legault because she had not filed a motion for summary judgment. The Broker invited error on this issue by requesting that the trial court enter a final judgment in favor of Legault so that the Broker could bring an appeal. Under the invited-error doctrine, "a party cannot successfully complain about an error for which he or she is responsible or of rulings that he or she has invited the trial court to make." *Baker v. R.J. Reynolds Tobacco, Co.*, 158 So. 3d 732, 737 (Fla. 4th DCA 2015). Because we conclude that the any error was invited, we do not reach the issue of whether summary judgment may have otherwise been

For these reasons, we affirm the final judgment.

*Affirmed.*

LEVINE, C.J., and ARTAU, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

appropriate under the line of cases beginning with *Carpineta v. Shields*, 70 So. 2d 573 (Fla. 1954).